**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JOHN SANTIAGO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MATTRESS FIRM, INC.,<br><br>Defendant. | Case No. 3:26-cv-5437-DGE<br><br>**DEFENDANT MATTRESS FIRM, INC.'S MOTION TO STRIKE PLAINTIFF'S NATIONWIDE CLASS ALLEGATIONS FROM THE COMPLAINT**<br><br>Judge: Chief Judge David G. Estudillo<br><br>CONSIDERATION DATE: SEPTEMBER 14, 2026 |



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

## TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1

II. BACKGROUND ... 1

A. Santiago's allegations. ... 1

B. Santiago pursues common-law claims on behalf of a nationwide class. ... 2

III. LEGAL STANDARD ... 3

IV. ARGUMENT ... 5

A. Washington law cannot govern out-of-state consumers' claims. ... 5

1. The Due Process, Full Faith and Credit, and Commerce Clauses prohibit applying Washington law to transactions that occurred entirely outside of Washington. ... 5

2. The Court lacks personal jurisdiction over claims by putative class members whose purchases occurred outside of Washington. ... 7

3. Washington's choice-of-law analysis precludes applying Washington law to the nationwide common-law claims. ... 9

(a) Washington does not have the most significant relationship with out-of-state class members. ... 10

(b) Washington law conflicts with other states' laws governing the putative class's claims. ... 11

i. Washington's choice-of-law rule leads to the same result reflected in Mazza. ... 11

(c) The different states' laws differ materially. ... 12

i. Breach of Contract and Warranty (Count II–III) ... 12

ii. Fraud / Intentional Misrepresentation (Count IV) ... 13

iii. Unjust Enrichment (Count VI) ... 14

(d) Other states' interests in having their laws applied to transactions that took place within their borders outweigh Washington's interest. ... 16

B. Applying the laws of multiple states negates any benefit of class proceedings. ... 17

V. CONCLUSION ... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10th Gear LLC v. Paccar, Inc.*,
765 F. Supp. 3d 1078 (W.D. Wash. 2025)....9, 10, 16

*Abuelhawa v. Santa Clara Univ.*,
529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021)....15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 624 (1997)....19

*Andren v. Alere, Inc.*,
No. 3:16-CV-01255-GPC(AGS), 2017 WL 6509550, at *17 (S.D. Cal. Dec. 20, 2017)....15

*In re Aqua Dots Prods. Liab. Litig.*,
270 F.R.D. 377, 386 (N.D. Ill. 2010)....16

*Barrand, Inc. v. Whataburger, Inc.*,
214 S.W.3d 122, 141 (Tex. App. 2006)....13

*Bean v. JUUL Labs, Inc.*,
2026 WL 839831, at *40–43 (Del. Super. Ct. Mar. 26, 2026)....15

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528, 540 (N.D. Cal. 2015)....19

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996)....5, 6

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*,
582 U.S. 255 (2017)....7, 8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110, 132-133 (N.D. Cal. 2020)....15

*Brooks v. Serv. Am. Corp.*,
No. 2:05-CV-01468, 2007 WL 98475, at *2 (W.D. Wash. Jan. 9, 2007)....12

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
476 U.S. 573, 582–83 (1986)....5

*Burr v. Nat'l Life & Acc. Ins. Co.*,
667 S.W.2d 5, 7 (Mo. Ct. App. 1984)....14

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028, 1034–35 (S.D. Cal. 2020)....8



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

*Clay v. Am. Tobacco Co.*,
188 F.R.D. 483, 501 (S.D. Ill. 1999) ....................14

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919, 1007 (C.D. Cal. 2015) ....................13

*Coto Settlement v. Eisenberg*,
593 F.3d 1031, 1041 (9th Cir. 2010) ....................15

*Davis v. Four Seasons Hotel Ltd.*,
2011 WL 5025521, at *6 (D. Haw. Oct. 20, 2011)....................15

*Dewey v. Wentland*,
2002 WY 2, 38 P.3d 402 (Wyo. 2002) ....................13

*Doninger v. Pac. Nw. Bell, Inc.*,
564 F.2d 1304, 1311 (9th Cir. 1977) ....................4

*Duncan v. Nw. Airlines, Inc.*,
203 F.R.D. 601 (W.D. Wash. 2001) ....................17, 18

*Fenwick v. Ranbaxy Pharms., Inc.*,
353 F. Supp. 3d 315, 330 (D.N.J. 2018) ....................13

*Fosmire v. Progressive Max Ins. Co.*,
277 F.R.D. 625, 635 (W.D. Wash. 2011) ....................12

*Frame-Wilson v. Amazon.com, Inc.*,
591 F. Supp. 3d 975, 994 (W.D. Wash. 2022)....................14

*Gianino v. Alacer Corp.*,
846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012) ....................18

*Gray & Co. v. Firstenberg Mach. Co.*,
913 F.2d 758, 760 (9th Cir. 1990) ....................3

*Johnson v. Spider Staging Corp.*,
87 Wn. 2d 577, 580 (1976) ....................9

*Kamm v. Cal. City Dev. Co.*,
509 F.2d 205, 212 (9th Cir. 1975) ....................4

*Kelley v. Microsoft Corp.*,
251 F.R.D. 544 (W.D. Wash. 2008) ....................9, 14, 16

*King v. Seitzingers, Inc.*,
160 Ga. App. 318, 318–319 (1981) ....................14

*Kunzelmann v. Wells Fargo Bank, N.A.*,
No. 9:11-CV-81373-DMM, 2013 WL 139913, at *10 (S.D. Fla. Jan. 10, 2013)....................16



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

*Lane v. Wells Fargo Bank, N.A.*,
No. 3:12-cv-04026-WHA, 2013 WL 3187410, at *4 (N.D. Cal. Jun. 21, 2013)....................12

*Ledesma v. Hismile, Inc.*,
812 F. Supp. 3d 957, 979 (N.D. Cal. 2025)....................14

*Lee v. ITT Corp.*,
275 F.R.D. 318, 324 (W.D. Wash. 2011)....................10, 11

*Lejbm v. Transnat'l Foods, Inc.*,
No. 17-cv-1317-CAB-MDD, 2018 WL 1258256, at *5 (S.D. Cal. Mar. 12, 2018)....................11

*Marsh v. First Bank of Del.*,
No. 11-cv-05226-WHO, 2014 WL 2085199, at *7 (N.D. Cal. May 19, 2014)....................19

*Mattel, Inc. v. Greiner & Hausser GmbH*,
354 F.3d 857, 862 (9th Cir. 2003)....................3

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018)....................8, 10

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012).................... *passim*

*Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*,
127 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015)....................4

*Muehlbauer v. Gen. Motors Corp.*,
431 F. Supp. 2d 847, 857 (N.D. Ill. 2006)....................13

*Olson v. Berggren*,
965 N.W.2d 442, 449 (2021)....................14

*In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*,
764 F. Supp. 3d 1026, 1049 (W.D. Wash. 2025)....................15

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
208 F.R.D. 625 (W.D. Wash. 2002)....................3, 19

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)....................5, 6, 7, 17

*Powers v. Lycoming Engines*,
272 F.R.D. 414, 420, 428-430 (E.D. Pa. 2011)....................13

*Ranza v. Nike, Inc.*,
793 F.3d 1059, 1069–70 (9th Cir. 2015)....................7

*Matter of Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293, 1301 (7th Cir. 1995)....................19



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

*Schnall v. AT & T Wireless Servs., Inc.*,
171 Wn. 2d 260 (2011) ....................17, 18

*ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*,
544 N.W.2d 302, 306 (Minn. 1996)....................16

*Sikes v. Teleline, Inc.*,
281 F.3d 1350, 1367 (11th Cir. 2002) ....................19

*Smith v. Whitener*,
42 Ark. App. 225, 856 S.W.2d 328, 329–30 (1993) (en banc)....................15

*State By & Through Div. of Consumer Prot. v. GAF Corp.*,
760 P.2d 310, 315 (Utah 1988)....................13

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408, 422 (2003)....................16

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
308 F.R.D. 630, 638 (N.D. Cal. 2015)....................12

*Thompson v. Jiffy Lube Int'l, Inc.*,
250 F.R.D. 607, 626 (D. Kan. 2008)....................16

*Vance v. Amazon.com Inc.*,
534 F. Supp. 3d 1314, 1324 (W.D. Wash. 2021)....................14

*Vinci v. Hyundai Motor Am.*,
No. 8:17-CV-00997, 2018 WL 6136828, at *8 (C.D. Cal. Apr. 10, 2018) ....................13

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935, 939–41 (9th Cir. 2009) ....................3

*W. Coast, Inc. v. Snohomish Cnty.*,
112 Wn. App. 200, 206, 48 P.3d 997, 1000 (2002) ....................13

*Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*,
42 So. 3d 1216, 1225 (Ala. 2010)....................15

*Young v. Young*,
164 Wn. 2d 477, 484 (2008) ....................15

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837, 847 (N.D. Cal. 2018) ....................11

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ....................16, 17, 18

*Zuehlsdorf v. FCA US LLC*,
No. 5:18-CV-01877, 2019 WL 2098352, at *14–15 (C.D. Cal. Apr. 30, 2019) ....................8

**Statutes**

Uniform Commercial Code....12

Washington's Consumer Protection Act....2, 10, 13

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)....3

Fed. R. Civ. P. 12(f)....3

Fed. R. Civ. P. 23....1, 3, 4, 18

Fed. R. Civ. P. 23(b)(3)....4, 17, 18

Fed. R. Civ. P. 23(c)(1)(A)....4

Fed. R. Civ. P. 23(d)(1)(D)....4



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

## I. INTRODUCTION

John Santiago ("Santiago") seeks to represent a nationwide class of consumers who allegedly purchased mattresses from Mattress Firm's website at discounted prices. Although Santiago lives in Washington and made his alleged purchase here, he pursues five different common-law claims on behalf of a nationwide class without specifying which state's law will govern those claims.

It can't be Washington law. The Due Process, Full Faith and Credit, and Commerce Clauses prohibit applying Washington law to transactions occurring entirely outside Washington when neither the alleged purchasers nor Mattress Firm are domiciled in Washington. Beyond those constitutional infirmities, (a) this Court lacks personal jurisdiction over claims arising from purchases made outside Washington by nonresident consumers; and (b) Washington's choice-of-law rules prohibit applying Washington common law to the claims of unknown class members whose transactions have no meaningful connection to Washington.

And it can't be the law of each state, either. The Complaint does not allege that the common laws of all 50 states are materially uniform, because they are not. Instead, the laws of the 50 states governing breach-of-contract claims, express-warranty claims, fraud claims, negligent-misrepresentation claims, and unjust-enrichment claims differ significantly. Because the Court would instead be required to apply numerous states' laws to Santiago's Counts II through VI, the proposed nationwide class cannot satisfy Rule 23's requirements, particularly relating to superiority or manageability.

Neither amendment nor discovery can cure these legal defects. Because the Complaint itself shows, as a matter of law, that no nationwide class can be certified, the Court should strike the class allegations now.

## II. BACKGROUND

### A. Santiago's allegations.

Mattress Firm, Inc. is a sleep-products retailer incorporated in Delaware and headquartered in Texas. (Dkt. 1 ("Compl.") ¶ 9.) It sells mattresses, bedding, and related products through retail stores and on its website (www.mattressfirm.com). (*Id.* ¶¶ 2, 9.) Mattress Firm offers a variety of branded products, including Beautyrest, Tempur-Pedic, Sealy, and Serta mattresses, in multiple sizes, comfort

configurations, and at different price points. (*Id.* ¶¶ 9, 19–24.) Mattress Firm displays its prices publicly on its website and updates them regularly. (*See id.* ¶ 23.)

Santiago alleges that he purchased a Beautyrest Silver BRS900-C 75 13.75" Extra Firm Full Mattress (the "Mattress") from Mattress Firm's website on May 17, 2025. (*Id.* ¶ 39.) Santiago alleges that the stricken-through reference price was $1,559.99, although he does not include an image of the allegedly deceptive-price display. The Complaint contradicts itself on the purchase details, stating that he paid $561.99 and $998.99, without resolving that conflict. (*Id.* ¶¶ 39, 41.) Santiago does not attach a copy of his order confirmation or receipt to the Complaint.

Santiago claims that he interpreted the online pricing display to mean that he was purchasing the Mattress at a "substantial discount" from its regular price and that the sale price was available only for a limited time. (*Id.* ¶¶ 39–40.) Based on these beliefs, Santiago bought the Mattress. (*Id.*) Santiago does not allege any problems with the Mattress (e.g., that it was defective, differed from its advertised features or specifications, or failed to perform as expected). Nor does Santiago allege that Mattress Firm charged more than the advertised sale price. Santiago asserts that Mattress Firm sells its products above market value, but does not allege how much Mattress Firm's products are worth.

**B. Santiago pursues common-law claims on behalf of a nationwide class.**

On April 23, 2026, Santiago filed this putative class action in the Western District of Washington. His core complaint is that Mattress Firm's reference prices were deceptive because they "were not the market price of the products." (Compl. at 8 (heading C.; capital letters eliminated).) Santiago alleges that consumers paid more than the products were actually worth, spent more than they would have absent deceptive marketing, and bought products they otherwise would not have bought. (*Id.* ¶¶ 5–6, 34, 36, 68.) Based on these allegations, Santiago brings six claims: (1) Violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86, on behalf of a "Washington Subclass"; (2) Breach of Contract; (3) Breach of Express Warranty; (4) Fraud/Intentional Misrepresentation; (5) Negligent Misrepresentation; and (6) Unjust Enrichment. (*Id.* ¶¶ 57–111.) Counts II through VI are asserted on behalf of a putative "Nationwide Class." (Compl. at 18–23.)

Santiago defines the Nationwide Class as "[a]ll persons in the United States who, within the

applicable statute of limitations period, purchased one or more mattresses from www.mattressfirm.com at a sale or discounted price from a higher reference price." (*Id.* ¶ 50.) He defines the Washington Subclass as all Nationwide Class members who made a purchase while in Washington. (*Id.*) Santiago—a Washington resident who purchased online a single mattress from a Delaware company—attempts to represent consumers in all 50 states and seeks to apply Washington common law (or, implicitly, a single state's law) to the alleged nationwide claims of unknown putative class members. The alleged class purchased products outside Washington from a company also not based in Washington.

Santiago does not identify any connection between Washington and the claims of out-of-state class members. And the Complaint admits that Mattress Firm is not incorporated in, headquartered in, or "at home" in Washington. (Compl. ¶ 9 (acknowledging Mattress Firm is incorporated in Delaware and headquartered in Texas).) The only alleged nexus to Washington is that Santiago himself resides there and made his purchase there. (*Id.* ¶¶ 8, 12.)

Nor does the Complaint allege that the laws of the 49 other states are similar or identical to Washington law with respect to any of the nationwide claims, or allege any facts that would establish Washington's interest in governing purely out-of-state transactions between out-of-state consumers and a non-Washington retailer.

## III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(f) authorizes a court to strike "immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). Courts routinely recognize that Rules 12(f) and 23 empower defendants to determine the viability of a class at the earliest pleading stage, when it is apparent from the face of the complaint that a proposed class cannot be certified as a matter of law. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–41 (9th Cir. 2009) (collecting cases and noting that a motion to deny class certification is a procedurally proper preemptive strike against the purported class action); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 634 (W.D. Wash. 2002) (granting defendants' motion to strike class allegations and denying certification of fraudulent misrepresentation and breach of express warranties).

Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal of claims for lack of personal

jurisdiction. The party asserting jurisdiction (here, Santiago) bears the burden of establishing it. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). To do so, that party must show that both the forum state's long-arm statute and due process support jurisdiction. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Because Washington's long-arm jurisdictional statute is coextensive with federal due-process requirements, the jurisdictional analysis under state law and federal due process are the same. *Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.,* 127 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015).

Rule 23 likewise resolves certification issues early. Federal Rule of Civil Procedure 23(c)(1)(A) requires the Court to determine whether to certify a class "[a]t an early practicable time," and Rule 23(d)(1)(D) authorizes orders requiring amendment to eliminate representation allegations from the pleading. Hence, courts may strike class allegations at the pleading stage when no amount of discovery could cure the legal deficiencies apparent from the complaint itself. *Kamm v. Cal. City Dev. Co*., 509 F.2d 205, 212 (9th Cir. 1975) (affirming order striking class allegations at the pleading stage).

Finally, Rule 23(b)(3) requires a plaintiff to establish that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Kamm*, 509 F.2d at 212 (stating factors supporting the conclusion "that the class action was not a superior method of resolving the controversy.") Early resolution is particularly appropriate when the complaint itself demonstrates that common questions cannot predominate or when the allegations are too generalized to show that Rule 23 can be satisfied. *Doninger v. Pac. Nw. Bell, Inc*., 564 F.2d 1304, 1311 (9th Cir. 1977).

When the complaint's allegations establish that a proposed nationwide class would require the Court to apply multiple states' laws, involve claims beyond the Court's personal jurisdiction, or otherwise fail to satisfy Rule 23 as a matter of law, the Court should strike the class allegations before the parties incur the substantial expense of further class litigation.

## IV. ARGUMENT

### A. Washington law cannot govern out-of-state consumers' claims.

The Complaint seeks to certify a nationwide class consisting of "[a]ll persons in the United States" who purchased a mattress from Mattress Firm's website at a purported discount from a higher reference price. (Compl. ¶ 50.) Santiago asserts common-law claims for breach of contract (Count II), breach of express warranty (Count III), fraud (Count IV), negligent misrepresentation (Count V), and unjust enrichment (VI) on behalf of this nationwide class. As explained below, Washington law cannot govern those claims.

#### *1. The Due Process, Full Faith and Credit, and Commerce Clauses prohibit applying Washington law to transactions that occurred entirely outside of Washington.*

The Complaint does not allege that Washington has a meaningful connection to out-of-state consumers' purchases. True, Santiago alleges that he is a Washington resident who purchased a single mattress while located in Washington. (*Id.* ¶ 8.) But he also admits that Mattress Firm is not headquartered or "at home" in Washington, because it is incorporated and headquartered in Delaware and Texas respectively. (*Id.* ¶ 9.) The Complaint does not allege any meaningful connections between Washington and the putative class. The closest it comes is alleging that Mattress Firm marketed and advertised its products in Washington. (*Id.* ¶ 12.) But that allegation pertains only to Washingtonians. It does not suggest, much less identify, any connection between Washington and out-of-state class members who made their purchases outside Washington.

Applying Washington law to these out-of-state transactions would flout constitutional limits on courts' powers. The Constitution prohibits a state from applying its substantive law to transactions lacking a significant connection to that state. Under the Due Process Clause and the Full Faith and Credit Clause, before a state's law may be applied to a dispute, the state must possess "significant contact or significant aggregation of contacts" to the claims asserted by each member of the putative class such that application of its law is neither arbitrary nor fundamentally unfair. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818–23 (1985). Likewise, the Commerce Clause prohibits a state from forcing its policy choices onto other states, thus preserving each state's authority to regulate conduct within its own borders. *See BMW*



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

*of N. Am., Inc. v. Gore*, 517 U.S. 559, 571–73 (1996); *see also Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 582–83 (1986) (explaining that although a state may regulate transactions occurring inside the state, it "may not project its legislation" into other states).

These constitutional limitations preclude applying Washington law to the claims of unknown class members whose purchases occurred outside Washington. Santiago alleges no facts connecting the claims of non-Washington purchasers to Washington. He does not allege that Mattress Firm made the challenged pricing decisions in Washington, that Mattress Firm is headquartered or incorporated in Washington, or that absent class members purchased products while in Washington. To the contrary, the proposed nationwide class expressly includes consumers from every state who allegedly completed transactions outside Washington. Hence, applying Washington common law to those claims would impermissibly regulate transactions occurring wholly outside Washington and would deprive other states of their principal interest in governing transactions occurring within their own borders.

*Phillips Petroleum Co. v. Shutts* is informative. It involved a nationwide class action filed in Kansas on behalf of residents from all 50 states against a lessee of oil and gas properties spread across 11 states. *Shutts*, 472 U.S. at 797. To facilitate adjudicating the case as a nationwide class action, the trial court applied Kansas law to every class member's claim, ignoring both the claimant's home state and the location of the relevant property. *Id.* at 823. The Supreme Court observed that nothing indicated that the parties ever expected Kansas law to govern leases involving land and royalty owners outside Kansas. Accordingly, it held that imposing Kansas law on claims lacking any connection to the state was "sufficiently arbitrary and unfair," to violate the Due Process and Full Faith and Credit Clauses. *Id.* at 822. The Court underscored that Kansas "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Id.* (quoting *Home Ins. Co. v. Dick*, 281 U.S. 397, 410 (1930)). It concluded that these constitutional constraints "must be respected even in a nationwide class action." *Id.* at 823.

Likewise, in *BMW of N. Am., Inc. v. Gore*, the Supreme Court ruled that an Alabama jury could not impose punishment under Alabama's fraud laws for vehicle transactions that bore no relationship to the state. The Court concluded that Alabama's attempt to regulate conduct occurring elsewhere conflicted

with fundamental federalism principles, explaining that a state "may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." *BMW of N. Am., Inc.*, 517 U.S. at 572. Efforts to reshape BMW's nationwide practices, the Court observed, would improperly intrude on "the policy choices of other States." *Id.* at 572.

Just as Kansas lacked any legitimate interest in whether a defendant owed interest on delayed royalty payments to nonresidents whose property lay outside Kansas—and just as Alabama had no authority to dictate when BMW must disclose pre-sale repairs in transactions occurring in other states—Washington has no valid stake in how a Delaware company, headquartered in Texas, sells products to consumers in the other 49 states. Applying Washington law nationwide would fall outside "the expectation of the parties," which the Supreme Court has identified as "an important element" of the due-process inquiry. *See Shutts*, 472 U.S. at 822.

***2. The Court lacks personal jurisdiction over claims by putative class members whose purchases occurred outside of Washington.***

The Complaint asserts nationwide common-law claims on behalf of out-of-state purchasers who allegedly bought mattresses entirely outside of Washington. For similar reasons, this Court lacks personal jurisdiction over those alleged out-of-state plaintiffs whose claims have no ties to Washington.

The personal-jurisdiction question here is narrow. Mattress Firm does not challenge the Court's jurisdiction over Santiago's individual claims or his claims on behalf of a Washington class. Instead, the question is whether the Court has specific personal jurisdiction over out-of-state purchasers' claims. First, a corporation is subject to general personal jurisdiction only where it is "essentially at home," ordinarily its place of incorporation or principal place of business. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069–70 (9th Cir. 2015). Here, the Court lacks general personal jurisdiction, because Mattress Firm is not "at home" in Washington. Instead, it is at home in Delaware or Texas. (Compl. ¶ 9.) Mattress Firm has no Washington "home." (*Id.*)

The Court also lacks specific personal jurisdiction over out-of-state class members' claims. Specific personal jurisdiction requires an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co.*



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

*v. Superior Court of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (internal citations omitted). Thus, courts lack specific jurisdiction when (as here), the defendant and the putative class are all out-of-state. *Id.* at 267. And crucially, *every* plaintiff's claim must arise from the defendant's forum-related activities. *Id.* at 256. That is simply not the case for the members of Santiago's putative nationwide class: non-Washington purchasers throughout the United States who bought mattresses outside of Washington, from an out-of-state retailer's website. *Id.* (the "mere fact" that a plaintiff obtained a product in a state does not allow the State to assert specific jurisdiction over the nonresidents' claims).

*Matus v. Premium Nutraceuticals, LLC* is also instructive. There, the court held that federal courts in California lack specific jurisdiction over a California consumer's nationwide false-advertising claims involving a Georgia-based defendant's website. 715 F. App'x 662, 663 (9th Cir. 2018). Because the defendant published the at-issue advertising nationwide from Georgia, the advertisements were neither purposefully directed toward California nor arising out of the company's California-related activities. *Id.* (stating that global publication or the maintenance of a passive website alone is insufficient). If a defendant "can be haled into California merely on the basis of its universally accessible website then ... every online advertiser worldwide can be haled into California.").

The same is true here. This case concerns purchases from Mattress Firm's website, which is accessible nationwide. But out-of-state putative class members who did not purchase products in Washington lack any connection to the forum that could support specific personal jurisdiction. And Santiago's own purchase in Washington cannot establish personal jurisdiction over claims arising from transactions completed by other consumers in other states. *Bristol-Myers Squibb Co.*, 582 U.S. at 265 (no specific jurisdiction over claims of nonresident plaintiffs against nonresident defendant). Permitting Santiago to pursue nationwide common-law claims under these circumstances would impermissibly expand this Court's jurisdiction beyond the Due Process Clause's limits. Because the Court lacks personal jurisdiction over claims arising from transactions occurring wholly outside Washington, the Court should strike Santiago's nationwide class allegations.[1]

---

[1] True, some courts in this Circuit have reached differing conclusions regarding the application of *Bristol-Myers* to unnamed putative class members prior to class certification. *See, e.g.*, *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1034–35 (S.D. Cal. 2020). But as *Carpenter* explains, the better-reasoned



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

### *3. Washington's choice-of-law analysis precludes applying Washington law to the nationwide common-law claims.*

Even if the Court could exercise personal jurisdiction over the claims of out-of-state putative class members, Santiago's nationwide class allegations fail for an independent reason: Washington's choice-of-law rules do not permit applying Washington common law to out-of-state transactions.

Washington adopted the most "significant relationship" rule for choice-of-law challenges. *Johnson v. Spider Staging Cor*p., 87 Wn. 2d 577, 580, (1976). Washington courts consider: (1) whether an actual conflict between Washington and other applicable state laws exists; and (2) if an actual conflict exists, which forum has the "most significant relationship" to the action to determine the applicable law. *Kelley v. Microsoft Corp*., 251 F.R.D. 544, 550 (W.D. Wash. 2008).

*Mazza v. Am. Honda Motor Co., Inc*. informs the choice-of-law analysis here, not because it supplies Washington's choice-of-law rule, but because it addresses obstacles that arise when materially different state laws and competing state interests govern a proposed nationwide class. In *Mazza*, the Ninth Circuit vacated certification of a nationwide class asserting California consumer-protection and unjust-enrichment claims. 666 F.3d 581, 589–97 (9th Cir. 2012). The court held that each class member's consumer-protection claim should be governed by the law of the jurisdiction where the transaction occurred and that variations in state law overwhelmed common issues, precluding predominance for a single nationwide class. *Id*. at 594–597.

Santiago's claims fail under both prongs of Washington's choice-of-law analysis. As discussed above, Washington has no relationship with out-of-state class members' claims—much less a "significant relationship." Regardless, even if Santiago could somehow demonstrate that Washington has a relationship to each class member's claim, he would still fail, because each state has a prevailing interest in governing conduct within its borders that could harm its residents. *10th Gear LLC v. Paccar, Inc.*, 765 F. Supp. 3d 1078, 1087–88 (W.D. Wash. 2025) (applying *Mazza* and stating that other states have their own interests in regulating trade practices that can injure their residents and impact their economy). "As

---

approach is to apply *Bristol-Myers* to nationwide class actions centered on out-of-state conduct. *Id.*; *Zuehlsdorf v. FCA US LLC*, No. 5:18-CV-01877, 2019 WL 2098352, at *14–15 (C.D. Cal. Apr. 30, 2019) (applying *Bristol-Myers* to nationwide class claims).

the Ninth Circuit has recognized, 'each state has a strong interest in determining the optimum level of consumer protection balanced against a more favorable business environment, and to calibrate its consumer protection laws to reflect their chosen balance.'" *Id.* (quoting *Mazza*, 666 F.3d at 592). Either way, Washington law cannot apply nationwide.

**(a) <u>Washington does not have the most significant relationship with out-of-state class members.</u>**

While Santiago alleges some connection between Washington and the claims of a *Washington Subclass* (persons who "while in the state of Washington, purchased one or more mattresses from www.mattressfirm.com at a sale or discounted price"), he does not allege any connection between Washington and the claims of out-of-state putative nationwide class members. (Compl. ¶ 50.) For example, if a consumer in California or Illinois is allegedly deceived by Mattress Firm's advertised "discounted price from a higher reference price" (*id.*) while in their home states, Santiago does not identify any basis for Washington law to apply. He equally fails to identify the types of "most significant relationship[s]" required under Washington's choice-of-law analysis. He seeks to apply Washington common law to claims brought on behalf of consumers nationwide, yet the Complaint contains no allegations establishing that Washington has the most significant relationship to those claims. Santiago alleges only that he resides in Washington and purchased a mattress here.

The Complaint acknowledges that Mattress Firm is incorporated and headquartered elsewhere. (*Id.* ¶ 9.) It alleges no facts showing, for example, that Mattress Firm's pricing decisions were made in Washington, that putative class members purchased products in Washington, or that Washington has any relationship to transactions involving non-Washington consumers. To the contrary, the proposed nationwide class expressly includes purchasers from every U.S. state.

Courts repeatedly refuse to apply Washington law nationwide under similar circumstances. In *10th Gear LLC v. Paccar, Inc.*, for example, the Western District of Washington held that Washington's Consumer Protection Act did not apply because the other states "in which plaintiffs reside have the most significant relationship to the misrepresentations/omissions that form the basis of plaintiffs' CPA claim and the greater interest in the outcome of this dispute." 765 F. Supp. 3d at 1087–88. Accordingly, Washington cannot be the appropriate jurisdiction considering that out-of-state putative class members

purchased mattresses in *different* fora, and no occurrence or parties (except with respect to Santiago's individual claims) have any significant relationship with Washington.

Here, Mattress Firm's online sales in Washington do not create a "significant" relationship with consumers in the other 49 states. *See Matus*, 715 F. App'x at 663 (maintaining a website alone cannot create a sufficient relationship); *Lee v. ITT Corp.*, 275 F.R.D. 318, 324 (W.D. Wash. 2011) (denying class certification). In *Lee*, the Court concluded that there were no significant contacts with Washington for the claims of 99% of the purported class, when only 1% of individuals were Washington residents. *Id.* Moreover, the defendants were not Washington corporations and did not have their principal places of business in Washington. *Id.* (stating that "Washington does not have significant contacts with each member's claims, so the Court cannot apply Washington law to the class as a whole.") The same is true here.

**(b) <u>Washington law conflicts with other states' laws governing the putative class's claims.</u>**

***i. Washington's choice-of-law rule leads to the same result reflected in Mazza.***

Under Washington law, the first question is whether an actual conflict exists. It does. As *Mazza* illustrates, state consumer-protection laws "materially differ" as to the elements necessary to establish them. *Mazza*, 666 F.3d at 596 (variances in state consumer-protection and unjust-enrichment laws "overwhelm common issues and preclude the predominance for a single nationwide class"). Those differences are significant; they determine whether a claim succeeds or fails.

The second Washington choice-of-law question evaluates other state laws. *Mazza* held that the laws of the jurisdiction in which the transaction took place governed because: the relevant communications and purchases occurred in those states; foreign states had strong interests in regulating transactions between their citizens and commercial entities doing business there; and the forum state's interests in applying its law to nonresidents were "attenuated." *Id.* at 592–94 (concluding that California law could not apply nationwide).[2] That reasoning applies with even greater force here because Mattress

[2] While *Mazza* involved a class-certification order, courts in the Ninth Circuit have granted motions to



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

Firm is not incorporated in Washington, is not headquartered in Washington, and is not alleged to have made the challenged pricing decisions in Washington.

**(c) The different states' laws differ materially.**

Here, Santiago purports to bring breach-of-contract, breach-of-warranty, fraud, misrepresentation, and unjust-enrichment claims on behalf of a putative nationwide class. (Compl. ¶¶ 71–111.) Numerous courts have stricken such nationwide claims at the pleadings stage, recognizing that serious conflicts exist among the 50 states' laws. These differences are discussed below and are more comprehensively outlined in the 50-state survey charts attached to this Motion as Exhibits 1–5.

***i. Breach of Contract and Warranty (Count II–III)***

This Court has recognized that that material differences distinguish the various states' breach-of-contract and warranty laws. *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 635 (W.D. Wash. 2011).

First, contract law differs from state to state, as *Fosmire* shows. There, the plaintiff brought a putative class action addressing automobile insurance policies that the defendant issued. *Id*. The plaintiff moved to certify a nationwide class regarding her breach-of-contract claim involving policies in seven different states. *Id*. at 631. Denying the plaintiff's motion for class certification, the Court acknowledged that each state's breach-of-contract jurisprudence "varies to some degree, including with respect to the length of the applicable statute of limitations, forms of recovery, and available contract defenses." *Id*. at 635. Furthermore, the Court expressed serious concerns that due-process precludes certifying a "multi-state class in which a court sitting in Washington with no personal jurisdiction over a class member in another state [ ] other than that he or she did not opt out of this class action, determines his or her claim [ ] under Washington law." *Id*. The same concerns arise here.

---

dismiss or strike "nationwide" claims based on its analysis. *See, e.g.*, *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018) (holding that "*Mazza* is not only relevant but controlling, even at the pleading stage"; dismissing "nationwide" claims); *Lejbm v. Transnat'l Foods, Inc.*, No. 17-cv-1317-CAB-MDD, 2018 WL 1258256, at *5 (S.D. Cal. Mar. 12, 2018) (granting motion to dismiss nationwide claims under *Mazza* because "noticeably absent from the pleading is any evidence that the out-of-state purchases were directed from California or had anything to do with California, such that California law might apply to those claims").

Second, courts recognize that warranty law differs among the states, as well. Santiago may suggest that the laws are uniform, because the Uniform Commercial Code governs Santiago's breach-of-warranty claim.[3] But courts have repeatedly held that the different states' versions of the UCC are not "uniform" in either terms or application. *See, e.g.*, *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.,* 308 F.R.D. 630, 638 (N.D. Cal. 2015) (state express-warranty law does not uniformly apply across an entire class); *Lane v. Wells Fargo Bank, N.A.,* No. 3:12-cv-04026-WHA, 2013 WL 3187410, at *4 (N.D. Cal. Jun. 21, 2013) (outlining "significant differences" between states' laws, "including whether the standard for good faith is subjective or objective and whether and to what extent the implied covenant constrains discretion expressly granted to one party by the contractual terms.")[4]

The charts attached to this Motion show differences in reliance and pre-litigation notice requirements for express-warranty claims. (Ex. X). For example, while Washington requires notice of a breach under RCW 62A.2-607, no "Maine court has held that notice is an element of a breach of warranty claim." *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 857 (N.D. Ill. 2006). And although actual reliance need not be shown under Utah law, Nebraska courts have recognized that requirement for a breach-of-express-warranty claim. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1007 (C.D. Cal. 2015); *State By & Through Div. of Consumer Prot. v. GAF Corp.,* 760 P.2d 310, 315 (Utah 1988). These variations underscore the appropriateness of striking Santiago's common-law claims.

#### *ii. Fraud / Intentional Misrepresentation (Count IV)*

The essential elements of fraud also differ from state to state. In *W. Coast, Inc. v. Snohomish Cnty.*, the court identified nine elements of intentional misrepresentation or fraud: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) knowledge of the falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of

---

[3] The UCC governs contracts concerning "transactions in goods." *See Brooks v. Serv. Am. Corp.*, No. 2:05-CV-01468, 2007 WL 98475, at *2 (W.D. Wash. Jan. 9, 2007) (citing RCW 62A.2-102).

[4] *See also, e.g.*, *Vinci v. Hyundai Motor Am.*, No. 8:17-CV-00997, 2018 WL 6136828, at *8 (C.D. Cal. Apr. 10, 2018) (noting material differences among various states' warranty laws) (citing cases); *Powers v. Lycoming Engines*, 272 F.R.D. 414, 420, 428–430 (E.D. Pa. 2011) (stating that since "we cannot group the differing laws to apply them as a unit, a single nationwide class action would be unmanageable."); *Fenwick v. Ranbaxy Pharms., Inc.*, 353 F. Supp. 3d 315, 330 (D.N.J. 2018) ("Plaintiffs have not explained how these variations in state law [ ] are not 'insuperable obstacles to class certification'") (citing cases).

the representation; (8) plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff. 112 Wn. App. 200, 206, 48 P.3d 997, 1000 (2002). By contrast, a Texas fraud claim requires six elements. *See Barrand, Inc. v. Whataburger, Inc.,* 214 S.W.3d 122, 141 n.5 (Tex. App. 2006) (citing six actionable fraud elements under Texas law). And Wyoming requires only three. *Dewey v. Wentland,* 2002 WY 2, ¶ 10, 38 P.3d 402, 410 (Wyo. 2002). The 50 states' fraud laws are not uniform, and the Complaint does not suggest otherwise.

States also differ regarding when fraud claims accrue and what constitutes "discovery" of the alleged fraud. For example, Georgia applies a discovery rule under which a claim does not accrue until the plaintiff discovers, or through reasonable diligence should have discovered, both the injury and its causal connection to the defendant's alleged conduct. *See King v. Seitzingers, Inc*., 160 Ga. App. 318, 318–319 (1981) (analyzing considerable authorities from other jurisdictions regarding when the cause of action accrues); *Burr v. Nat'l Life & Acc. Ins. Co*., 667 S.W.2d 5, 7 (Mo. Ct. App. 1984) (accrual period begins at the time the defrauded party discovered or through due diligence, should have discovered the fraud). By contrast, other states employ different formulations, including rules under which a fraud claim accrues when the plaintiff has either actual or constructive notice of the alleged fraud. *See, e.g., Olson v. Berggren*, 965 N.W.2d 442, 449 (2021). These differences affect not only whether a fraud claim is timely, but also what facts must be proven regarding notice, diligence, inquiry notice, and accrual. Accordingly, fraud claims vary materially among the states not merely in their substantive elements, but also in the rules governing when such claims may be brought.

***iii. Unjust Enrichment (Count VI)***

This Court has recognized that the elements of unjust enrichment "vary from state to state and require individualized proof of causation." *Kelley*, 251 F.R.D. at 551. The Ninth Circuit in *Mazza* "has already found that for unjust enrichment claims, the laws of the other states are materially different." *Ledesma v. Hismile, Inc*., 812 F. Supp. 3d 957, 979 (N.D. Cal. 2025) ("It is hard to imagine a clearer directive from our Circuit on this issue" (citing cases)); *see also Mazza*, 666 F.3d at 594.

Material disparities, many of which are set forth with additional citations in the legal appendix attached to this Motion as Exhibit 5, include:

- **Scope of "unjust enrichment":** As the Ninth Circuit has elaborated, the actual definition of "unjust enrichment" varies from state to state. *Id.* at 591. Some states do not specify the misconduct necessary to proceed, while others require that the alleged misconduct include dishonesty or fraud. *See, e.g.*, *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 501 (S.D. Ill. 1999); *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 994 (W.D. Wash. 2022) (recognizing that state laws of unjust enrichment vary); *Vance v. Amazon.com Inc.*, 534 F. Supp. 3d 1314, 1324 (W.D. Wash. 2021) (recognizing an actual conflict between Washington and Illinois law over whether plaintiffs must plead that they suffered an economic expense).
- **Standalone claim:** Unjust enrichment is a standalone equitable claim in some states, and a remedy in others. *See, e.g.*, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010) (applying Washington law and stating that unjust enrichment is not an independent cause of action); *Abuelhawa v. Santa Clara Univ*., 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) ("California does not recognize a separate cause of action for unjust enrichment" (collecting federal cases)); *Bean v. JUUL Labs, Inc*., 2026 WL 839831, at *40–43 (Del. Super. Ct. Mar. 26, 2026) (noting that in some states, unjust enrichment is not an alternative remedy); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132–133 (N.D. Cal. 2020). As a result, "courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky*, 445 F. Supp. 3d at 132. This Court should reach the same conclusion.
- **Benefit of the bargain:** Twenty states and the District of Columbia do not allow claims for unjust enrichment when the plaintiff has received the benefit of the bargain. *See* Ex. [X]; *Andren v. Alere, Inc*., No. 3:16-CV-01255-GPC(AGS), 2017 WL 6509550, at *17 (S.D. Cal. Dec. 20, 2017).
- **Lack of adequate remedy:** Eleven states (AZ, HI, LA, MA, MN, NY, NC, ND, UT, TN, and PA) require plaintiffs to demonstrate that they lack an adequate remedy at law. *See Davis v. Four Seasons Hotel Ltd.*, No. 1:08-CV-00525, 2011 WL 5025521, at *6 (D. Haw. Oct. 20, 2011) (Hawaii courts observe the principle that equitable remedies, like unjust enrichment, are only available when legal remedies are inadequate).
- **Defendant's knowledge of the benefit received:** Ten states (FL, KS, ME, MD, NV, NM, OH,

UT, WA, and WI) require plaintiffs to establish that the defendant appreciates or has knowledge of the benefit conferred. *See Young v. Young*, 164 Wn. 2d 477, 484, (2008); *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1049 (W.D. Wash. 2025) (plaintiff must allege an appreciation or knowledge of the benefit).

- **Degree of wrongful conduct required:** States also vary in the degree of wrongful conduct required for liability. For example, Arkansas does not require any bad faith or wrongful conduct; Alabama, by contrast, requires the defendant to have engaged in unconscionable conduct. *Compare Smith v. Whitener*, 42 Ark. App. 225, 856 S.W.2d 328, 329-30 (1993) (en banc), *with Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.,* 42 So. 3d 1216, 1225 (Ala. 2010) (noting that Alabama courts require defendants to have engaged in unconscionable conduct for a claim of unjust enrichment). In Minnesota, "it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996).

Considering these material differences, courts reject attempts to bring nationwide unjust-enrichment claims. *See, e.g.*, *Mazza*, 666 F.3d at 591. In *In re Aqua Dots Prods. Liab. Litig*., the Northern District Court of Illinois stated that unjust enrichment "varies too much" to be amenable to national or multistate class treatment. 270 F.R.D. 377, 386 (N.D. Ill. 2010) (moreover, the unjust enrichment subclasses "pose insurmountable choice-of-law problems"). So too, in *Thompson v. Jiffy Lube Int'l, Inc*., the court held that due to variations between state unjust-enrichment laws, "federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment." 250 F.R.D. 607, 626 (D. Kan. 2008); *see also Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-CV-81373-DMM, 2013 WL 139913, at *10 (S.D. Fla. Jan. 10, 2013) (state-by-state analysis and finding that plaintiff could not carry his burden of showing there are no material variations in the law); *Kelley*, 251 F.R.D. at 551 (the law of unjust enrichment varies). Likewise, Santiago's Count VI should be stricken.

**(d) <u>Other states' interests in having their laws applied to transactions that took place within their borders outweigh Washington's interest.</u>**

It is a principle of federalism that "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

U.S. 408, 422 (2003); *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (stating that "every state has an interest in having its law applied to its resident claimants."). Applying one state's laws to conduct in other states would impair the ability of other states "to calibrate liability to foster commerce." *Mazza*, 666 F.3d at 593.

Here, as in *Mazza*, each foreign state has an overriding interest in applying its laws to transactions within its borders. *Id.*; *10th Gear LLC*, 765 F. Supp. 3d at 1087–88 (same; applying *Mazza*). By contrast, Washington has no interest in applying its laws to conduct by a Delaware corporation, headquartered in another state. Again, Washington has no connection to the claims of out-of-state customers. Indeed, even in *Mazza* when the defendant was based in California, the Ninth Circuit still held that "California's interest in applying its law to residents of foreign states is attenuated," and that the laws of other states should apply. *Mazza*, 666 F.3d at 594.

Thus, because the laws of the states vary and because each state has an overriding interest in applying its laws to transactions within its borders, the Court should therefore follow *Mazza* and reject Santiago's apparent request to apply Washington law nationwide.

**B. Applying the laws of multiple states negates any benefit of class proceedings.**

As established above, Washington law cannot govern the nationwide class, and the law of each consumer's home state must apply instead. Because the laws of the 50 states materially differ with respect to Santiago's common-law claims—as demonstrated by the state-law survey charts attached as Exhibits 1–5—the need to apply multiple states' laws prevents certification under Rule 23(b)(3).

For a class action to be certified under Rule 23(b)(3), the class representatives must show that common questions of fact or law predominate, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In determining whether these requirements are satisfied, courts must consider "the difficulties likely to be encountered in the management of a class action." *Zinser*, 253 F.3d at 1192 (citing Fed. R. Civ. P. 23(b)(3)(D)).

When a court must apply multiple states' laws to common-law claims, the variations in legal standards prevent common questions from predominating over individual issues. The Supreme Court has explained that a court "may not take a transaction with little or no relationship to the forum and apply the

law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Shutts*, 472 U.S. at 821.

Due to the material differences between the consumer-protection laws at issue here, Santiago cannot demonstrate "Rule 23(b)(3) predominance and manageability for a nationwide class." *Mazza*, 666 F.3d at 596; *see also Schnall v. AT & T Wireless Servs., Inc.*, 171 Wn. 2d 260, 271, (2011) (noting the "burden of applying multiple states' laws" and citing "an overwhelming number of federal courts" denying certification of nationwide state-law class actions).[5] *Duncan v. Nw. Airlines, Inc.,* is instructive. There, the named plaintiff sued Northwest Airlines under Washington law and sought to represent a class of plaintiffs in six other states. 203 F.R.D. 601, 613 (W.D. Wash. 2001). The plaintiff also attempted to certify a class for her negligence claim. *Id.* at 604. The Court concluded that variations in states' common laws precluded certification. *Id.* at 613–14.

Here, the Complaint offers nothing suggesting that the common laws of all 50 states are materially uniform. Instead, it simply assumes that a single body of law will govern claims arising under materially different legal regimes.

But applying the laws of all 50 states would defeat predominance and render the class unmanageable. *Schnall*, 171 Wn. 2d at 273 (stating that if the laws of 50 jurisdictions apply, "the variations in the laws of the states ... 'may swamp any common issues and defeat predominance'" (citations omitted)). Resolving the viability of the proposed nationwide class claims would require this Court to identify the governing law applicable to each putative class member, determine whether material conflicts exist among the relevant states' laws, and apply those differing legal standards to each common-law cause of action. Such an exercise would eliminate the efficiencies that Rule 23 is intended to promote.

Moreover, Rule 23(b)(3) requires the plaintiff to show that the class mechanism is superior to other methods for adjudicating the controversy. "If more than a few laws of the fifty states differ, the district judge would face the impossible task of instructing the jury on the relevant law." *Duncan*, 203 F.R.D. at

---

[5] *See Schnall,* 171 Wn. 2d at 271 (citing *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000)) ("Federal courts unanimously reject plaintiffs' attempt to apply the law of one state in non-federal question class suits. Courts find this attempt to end-run legal variation as a simplistic approach that ignores state law choice of law principles and violates constitutional due process concerns.").

613 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)). When the applicable law derives from the laws of all 50 states, differences in state law "compound" the "disparities" among class members from different states and defeat any claim of superiority. *Zinser*, 253 F.3d at 1189. Other courts in this Circuit agree. *See, e.g.*, *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012) (stating that "trial would devolve quickly into an unmanageable morass of divergent legal issues").

Litigation would become "incredibly time-consuming, unnecessarily disjointed, hopelessly confusing, and unfairly prejudicial" to Mattress Firm and "many, if not all, of the members of the class." *Gianino*, 846 F. Supp. 2d at 1104; *see also Mazza*, 666 F.3d at 589–96 (vacating class certification when applying multiple jurisdictions' laws would "overwhelm common issues and preclude predominance").[6] These concerns warrant striking the nationwide class allegations from Counts II through VI.

## V. CONCLUSION

As Judge Posner memorably put it, "[t]he voices of the quasi-sovereigns that are the states of the United States sing [ ] with a different pitch," and ought to be respected. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1301 (7th Cir. 1995); *Marsh v. First Bank of Del.*, No. 11-cv-05226-WHO, 2014 WL 2085199, at *7 (N.D. Cal. May 19, 2014). Here, this Court should strike Counts II through VI to the extent they are asserted on behalf of a putative nationwide class. It would be arbitrary and manifestly unfair to apply Washington law to the claims of alleged purchasers sitting in the other 49 states. The Constitution and Washington law both prohibit the Court from doing so.

Thus, the Court should strike all allegations and claims in which Santiago seeks to represent a nationwide class.

---

[6] Courts across the country are in accord. *See, e.g. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997) (recognizing that differences in state laws compound disparities); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. at 629 (granting motion to strike class allegations and denying class certification of negligence, misrepresentation, fraudulent misrepresentation, and breach of implied and express warranty claims); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015) (declining to certify a nationwide unjust-enrichment class due to material variations in state laws); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1367 n.44 (11th Cir. 2002).



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

Dated: August 17, 2026

Respectfully submitted,

By: /s/ Davis Leigh
David R. Ebel, WSBA #28853
Email: debel@schwabe.com
David Leigh, WSBA #58825
Email: dbleigh@schwabe.com
1420 5th Avenue, Suite 3400
Seattle, WA 98101
206-622-1711

Michael D. Meuti (OH 0087233)
*Admitted Pro Hac Vice*
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588

Michael B. Silverstein (OH 0098036)
*Pro Hac Vice Forthcoming*
Benesch, Friedlander, Coplan & Aronoff LLP
41 South High Street, Suite 2600
Columbus, Ohio 43215
Telephone: 614.223.9300
Facsimile: 614.223.9330

Ruddy S. Abam (IL 6335470)
*Pro Hac Vice Forthcoming*
rabam@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192

*Attorneys for Defendant*
*MATTRESS FIRM, INC.*

I certify that this memorandum contains 7,360 words, in compliance with the Local Civil Rules

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of August, 2026, I electronically filed the foregoing MOTION TO STRIKE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
Michael D. Meuti, *Pro hac vice admission forthcoming*
Email: mmeuti@beneschlaw.com
127 Public Square, Suite 4900
Cleveland, OH 44114
*Co-Counsel for Defendant*

NICK MAJOR LAW PLLC
Nicholas R. Major, WSBA No. 49579
nick@nickmajorlaw.com
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
Phone: 206-410-5688
*Local Counsel for Plaintiff*

And I hereby certify that I have emailed the document to the following non-CM/ECF participants:

GUCOVSCHI LAW FIRM, PLLC.
Adrian Gucovschi, *Pro hac vice admission forthcoming*
adrian@gucovschilaw.com
140 Broadway, Fl. 46
New York, New York 10005
Phone: 212-884-4230
Fax: 212-884-4230
*Co-Counsel for Plaintiff*

HEDIN LLP
Frank S. Hedin, *Pro hac vice admission forthcoming*
fhedin@hedinllp.com
1395 Brickell Avenue, Suite 610
Miami, Florida 33131-3302
Phone: 305-357-2107
Fax: 305-200-8801
*Co-Counsel for Plaintiff*

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
Michael B. Silverstein (OH 0098036)
*Pro Hac Vice Forthcoming*
MSilverstein@beneschlaw.com
41 South High Street, Suite 2600
Columbus, Ohio 43215
Telephone: 614.223.9300
Facsimile: 614.223.9330

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
Ruddy S. Abam (IL 6335470)
*Pro Hac Vice Forthcoming*
rabam@beneschlaw.com
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192

By: */s/ Davis Leigh*
Davis Leigh, WSBA #58825