# Exhibit A

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Paul Karl Lukacs WSBA No. 56093
pkl@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
Telephone: 425.233.8650
Facsimile: 425.412.7171

Stephen P. DeNittis, Esq.*
sdenittis@denittislaw.com
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978

*Attorneys for Plaintiff and the Proposed Class*

**Pro hac vice application to be submitted*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHAWNNA MONTES,
on behalf of herself and all others similarly situated,

Plaintiff,

v.

SPARC GROUP LLC,

Defendant.

No. ____________________

**CLASS ACTION COMPLAINT FOR DAMAGES UNDER THE CONSUMER PROTECTION ACT, RCW 19.86**

**JURY TRIAL DEMANDED**



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Plaintiff Shawnna Montes, demanding trial by jury as to all issues so triable, alleges as follows, on personal knowledge and investigation of her counsel, against Defendant SPARC Group LLC d/b/a Aéropostale (hereinafter "Defendant" or "Aéropostale"):

# I. INTRODUCTION

1. This lawsuit is a class action on behalf of Washington consumers who purchased falsely discounted clothing and accessories on the Aéropostale website and, due to Aéropostale's fraud, paid more than they otherwise would have paid.

2. Aéropostale is a designer, marketer, and retail seller of casual clothing and accessories, targeting primarily the teen and young adult market. Almost all the items offered for sale by Aéropostale on its website and in its retail stores are branded as "Aéropostale" products, and are offered and sold exclusively by Aéropostale. Aéropostale had over $1 billion in sales revenues in 2019 on its website and in its brick-and-mortar stores.

3. For years, Aéropostale perpetrated a massive false discount advertising scheme across nearly all of its Aéropostale-branded products and sales channels (i.e., on Aéropostale website and in its brick-and-mortar stores). Specifically, Aéropostale advertised perpetual or near perpetual website-wide and store-wide "sales" and percentage-off discounts—typically 50% to 70% off—from Aéropostale's self-created list prices for its products in order to trick its customers and the general public into thinking that its products were "on sale."

4. Aéropostale represented its list prices, which were advertised on its website with a slash-through (and which were printed on the product tags affixed to the items it sold), to be the "regular" and normal selling prices of the items. The list prices functioned as reference prices to which the advertised discounts were applied.

5. Aéropostale also advertised "free" offers such as "Buy 1 Get 1 Free" or



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

"Buy 1 Get 2 Free," where Aéropostale represented that it would include one or two more of a given item (or of a specified similar item) for "free" if the customer paid the list price for the item.

6. Aéropostale's advertised discounts were false because Aéropostale never or rarely offered or sold its products at the advertised list price. Rather, Aéropostale invented inflated and fictitious list prices in order to enable it to advertise perpetual discounts and store-wide "sale" events to induce customers to purchase its products. Aéropostale's "free" offers were likewise false because Aéropostale directly recovered the cost of the "free" items by doubling or tripling the first item's selling price to the inflated—and otherwise never charged—list price.

7. Aéropostale's marketing plan was to trick its customers into believing that the list price (which it labeled the **"REGULAR PRICE"** on its website), and which it printed on its product tags, was the regular and normal selling price for its products, and that its products were worth this inflated list price, such that the lower advertised "sale" price represented a special bargain.

8. Aéropostale's nationwide deceptive advertising scheme harmed Washington state consumers like Plaintiff Shawnna Montes, who purchased falsely discounted products from Aéropostale's website. Customers like Plaintiff were harmed because they would not have purchased the items at the prices they paid had they known the items were not truly "on sale" and had not been regularly offered at the higher list price. And in fact, the items they purchased were not actually worth the inflated amount that Aéropostale represented to them. Aéropostale's unlawful advertising not only directly harmed its customers and prospective customers—it harmed the integrity of competition in retail markets and injured honest competitors who played by the rules.



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

9. Moreover, Aéropostale had no means to "establish" its online list prices through full-price sales in its retail stores. Based on the investigation of Plaintiff's counsel, Aéropostale offered and advertised its products with identical list prices and at substantially the same sale prices both on the Aéropostale website and in its retail stores in Washington and throughout the nation. Aeropostale virtually never offered its discounted products at the list price in ***any*** sales channel—whether online or in-store.

10. Plaintiff Montes brings this action individually and on behalf of a class of similarly situated Aéropostale Washington customers who purchased purportedly discounted products on the Aéropostale website, and is seeking, *inter alia*, damages (which may be trebled) under the Washington Consumer Protection Act ("CPA"), RCW 19.86.

## II. <u>PARTIES</u>

11. Plaintiff Shawnna Montes is a citizen of the United States of America and Washington and an individual and a natural adult person who resides in Spokane County, Washington.

12. Defendant SPARC Group LLC ("SPARC") is a limited liability company chartered under the laws of the State of Delaware. SPARC currently has, and at all relevant times had, its executive, marketing, and technology operations in Lyndhurst, New Jersey or New York, New York. SPARC Group LLC manages the retail and website operations of the Aéropostale brand and has conducted the unlawful actions described herein. SPARC describes itself as "a fashion industry leader that designs, sources, manufactures, distributes and markets women's, men's and kids apparel and accessories in key markets worldwide for iconic brands including Aéropostale, Brooks Brothers, Eddie Bauer, Forever 21, Lucky Brand,



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Nautica and Reebok."[1] SPARC Group LLC is a joint venture between Simon Property Group, L.P. and Authentic Brands Group LLC. Some of the unlawful activities pled herein were conducted by SPARC Group LLC when SPARC Group LLC was legally named "Aero OpCo LLC."[2] For purposes of this lawsuit, SPARC Group LLC is a successor to Aero OpCo LLC, and SPARC Group LLC is responsible for all unlawful actions pled herein that SPARC Group LLC conducted during the time that it was named Aero OpCo LLC.

13. Defendant SPARC Group LLC operates a retail website www.aeropostale.com, through which Defendant advertises and sells its goods, with said website being regularly seen and used by consumers in Washington and throughout the United States to purchase goods from Aéropostale. SPARC Group LLC also owns and/or operates approximately 500 brick-and-mortar Aéropostale retail stores throughout the United States, including 8 in Washington.

14. The allegations of this Complaint only concern Aéropostale's actions since September 16, 2016, during which time Defendant has owned and/or operated the Aéropostale business.

## III. JURISDICTION AND VENUE

15. **Subject Matter Jurisdiction.** The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)—i.e., Class Action Fairness Act jurisdiction—because the amount in controversy exceeds the sum or value of $5

---

[1] *See* SPARC Group LLC homepage at: https://www.sparcgroup.com/ (last accessed September 13, 2022).

[2] SPARC Group LLC still appears to operate to some extent under the name Aero OpCo LLC. For example, as of September 13, 2022, the Aéropostale Terms & Conditions posted on Aéropostale's website at https://www.aeropostale.com/terms-of-service.html stated: "Aeropostale.com is operated by Aero OpCo LLC ('Aero') on behalf of itself and its affiliates (the 'Web Site')."



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

million (exclusive of interest and costs) and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

16. Defendant has generated substantially more than $5 million in revenue from sales on its Aéropostale website in Washington during the past four years. Further, the CPA allows treble damages, which also count towards the amount in controversy. Because treble damages may be considered, the $5 million amount in controversy is met under any possible damages theory. For example, the $5 million is met if the damages (trebled) is the full purchase price of each product that Plaintiff and putative class members would not have bought but for the misrepresentations. The $5 million is similarly met if the damages (trebled) is the difference between the value of each product as represented and the value of the product as purchased.

17. **Personal Jurisdiction.** This Court may exercise personal jurisdiction over Defendant pursuant to Washington State's long-arm statute, RCW 4.28.185. This Court may exercise personal jurisdiction over out-of-state Defendant because the claims alleged in this civil action arose from, without limitation, the transaction by Defendant of any business within the State of Washington (and/or within the Eastern District of Washington), and/or the commission by Defendant of a tortious act within the State of Washington (and/or within the Eastern District of Washington).

18. This Court may exercise personal jurisdiction over out-of-state Defendant to the fullest extent allowed under the federal due process clause. Defendant has certain minimum contacts with the State of Washington (and/or with the Eastern District of Washington) such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. As alleged in this pleading, Defendant has and continues to purposefully do some act or consummate some transaction in the State of Washington (and/or in the Eastern District of Washington), Plaintiff's claims arise from and/or are connected with said act or



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

transaction of Defendant, and the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the State of Washington (and/or in the Eastern District of Washington), the relative convenience of the parties, the benefits and protection of laws of the State of Washington afforded the respective parties, and the basic equities of the situation.

19. Aéropostale operates a website, www.aeropostale.com, by which Aéropostale advertises and sells its goods, with said website being regularly seen by Washington and Eastern District consumers and being regularly used by Washington and Eastern District consumers to purchase goods from Aéropostale. Aéropostale also owns and operates approximately eight Aéropostale-branded retail stores in the State of Washington, including a store in Spokane.

20. **Venue.** Venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391(b) because, without limitation, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Washington.

21. **Intra-District Assignment.** Plaintiff Montes resides in Spokane County, which is within the Spokane Division of the Eastern District of Washington.

## IV. FACTUAL ALLEGATIONS OF AÉROPOSTALE'S FALSE DISCOUNT ADVERTISING SCHEME

22. This lawsuit concerns damages suffered by Washington consumers who purchased falsely discounted products **from the Aéropostale retail website** at www.aeropostale.com. (Aéropostale also operates brick-and-mortar Aéropostale retail stores throughout the United States, including 8 in Washington state; but those retail store sales are not the subject of this lawsuit.)

23. Almost all the items offered by Aéropostale are branded as



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

"Aéropostale" products and are exclusively offered for sale and sold by Aéropostale on its website (and in its retail stores). In other words, the products offered by Aéropostale on its website and in its stores are not offered or sold by, and are not available from, any other retailer.

24. Aéropostale had over $1 billion in sales revenues in 2019 on its website and in its retail stores.

25. In significant part, however, Aéropostale's revenues have been the product of a massive false discount advertising scheme. Aéropostale perpetually advertised nearly all of its products with significant discounts of 50-70% from a false reference price, in order to trick its customers into believing the advertised "sale" price represented a special bargain from Aéropostale's usual and "regular" prices. In fact, unbeknownst to its customers, Aéropostale's discounts were never-ending, and its products were never or virtually never offered at the supposed regular price. Aéropostale perpetrated this illegal scheme in order to induce consumers to purchase its products and to increase the amount it could charge for its products.

26. Decades of academic research has established that the use of false discounts, such as those utilized by Aéropostale, materially impacts consumers' behavior. Advertised discounts from a higher reference price affect a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[3]

---

[3] *See*, *e.g.*, Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual*



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

27. When advertised discounts and the reference prices to which those discounts are applied are bona fide and truthful—e.g., when those reference prices truly represent the retailer's regular former prices for the product—they may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Aéropostale, advertise fake "sales" from false and inflated purported former prices. **The advertised false discounts from inflated former prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.**

28. Fake "sales" from false former prices—as employed by Aéropostale—cause consumers to pay more than they otherwise would have paid for products. False discounts also illegitimately increase consumer demand for products, shifting the demand curve and enabling the retailer to charge higher prices—to everyone—than the retailer otherwise could have charged.

29. Beyond the adverse impact upon consumers' welfare, the practice of employing false discounts from false former prices also negatively affects the integrity of competition in retail markets. A retailer's use of false discounts constitutes an unfair method of competition, injuring honest competitors that sell the same or similar products, or otherwise compete in the same market, who advertise legitimate sales from valid and accurate former prices. Businesses who play by the

---

*Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

30. Washington law, as well as federal regulations which guide Washington law, prohibit false discount advertising practices such as those perpetrated by Aéropostale.

31. "The [Consumer Protection Act], first enacted in 1961, is Washington's principal consumer protection and antitrust statute. The consumer protection provisions of the CPA were modeled after Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45." Washington Pattern Jury Instruction No. 310.00 (Consumer Protection Act — Introduction).

32. The Washington Consumer Protection Act is codified as Chapter 19.86 of the Revised Code of Washington. Its principal substantive provision states "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

33. The Washington Legislature has declared the purpose and intent of the Consumer Protection Act: "The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920.

34. Under Washington law, "The capacity of a marketing technique to deceive is determined with reference to **the least sophisticated consumers** among us." *Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011) (emphasis added).

35. Under the Washington Consumer Protection Act ("CPA"), Defendant's false discount advertising scheme constituted unfair methods of competition and/or unfair or deceptive acts or practices which directly affected the people of



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Washington, and which injured Plaintiff Shawnna Montes, the members of the Class, honest competing businesses, the integrity of the retail marketplace, and the general public.

36. The text of the Washington Consumer Protection Act explicitly states that in determining whether an act is unlawful under the CPA, courts should look for guidance to how the Federal Trade Commission ("FTC") has dealt with similar subject matter. "It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters …" RCW 19.86.920. Thus, in interpreting whether alleged false discount advertising and false "free" offers are unfair deceptive acts and practices under the Washington CPA, the courts should be guided by the FTC rules on former price comparison advertising at 16 C.F.R § 233.1 *et seq*. and the FTC rules on "free" offers at 16 C.F.R. § 251.1 (collectively, the "FTC Rules").

37. In 16 C.F.R § 233.1, the FTC describes what constitutes **false discount advertising from false former prices**:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such cases, the "reduced price" is, in reality, probably just the seller's regular price.



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

38. In 16 C.F.R. § 251.1, the FTC describes what constitutes a **false and deceptive "free" offer**:

> Because the purchasing public continually searches for the best buy, and regards the offer of "Free" merchandise or service to be a special bargain, all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived. … [W]hen the purchaser is told that an article is 'Free' to him if another article is purchased, the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other. *Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased . . .* "

(emphasis added).

39. The United States Court of Appeals for the Ninth Circuit has also recognized the abuses that flow from false discount advertising: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

40. Aéropostale's false discounting scheme is similar in all material respects to the deceptive practices described and prohibited by the Washington CPA and the FTC Rules.



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

### A. <u>Aéropostale's False Discounts From False Former Prices</u>

41. Aéropostale intentionally and deceptively indicated to consumers that the advertised "sale" prices on its website represented significant discounts from Aéropostale's own "regular price" for its products.

42. Aéropostale perpetually advertised 50-70% storewide savings on its website whether it was in the middle of summer, whether it was Black Friday, or whether it was in the middle of April.

43. For example, on April 23, 2021, Aéropostale advertised on its website a "50-70% OFF ENTIRE SITE" sale (in addition to a "Buy 1, Get 1 Free" sale). See the screenshot below:

**Homepage of Aéropostale Website April 23, 2021**






**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

44. There can be no doubt that Aéropostale intended that consumers interpret and understand the strike-through list prices advertised on its website (and printed on its product tags) to stand for Aéropostale's regular selling prices for those products. In fact, for years on its product webpages on the Aéropostale website, Aéropostale prominently advertised that the advertised savings were from Aéropostale's **"REGULAR PRICE."** See the screenshot below:

**Aéropostale Product Webpage August 20, 2020**




45. The screenshot above is of the product webpage for the Long Sleeve Seriously Soft Crew Tee ("Crew Tee") taken from the Aéropostale website on August 20, 2020. Aéropostale featured a prominent red box with the phrase **"SAVE 59% OFF THE REGULAR PRICE."** The 59% savings was applied to the represented "regular" strike-through list price of $29.50. Further, for maximum consumer impact, Aéropostale designed this red box (containing the **"SAVE 59% OFF THE REGULAR PRICE"**) as an animation on the product webpage which suddenly flew in from the right side of the screen and bounced up against the strike-through list price.

46. The advertised savings was false. Since November 1, 2019, Aéropostale had ***never*** charged more than the $12.00 selling price for the Crew Tee. Notably, based on counsel's investigation, from November 26, 2019 through August 19, 2020



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Aéropostale charged $7.00 for the Crew Tee ($5.00 less than the supposed $12.00 "sale" price). Thus, customers who purchased the falsely discounted Crew Tee on August 20, 2020, had been tricked by Aéropostale into paying $5.00 ***more*** than the true "regular price" of the Crew Tee.

47. Moreover, Aéropostale had no means to "establish" the $29.50 list price for the Crew Tee in its brick-and-mortar retail stores. Based on the investigation of Plaintiff's counsel, Aéropostale offered and advertised its products with identical list prices and at substantially the same sale prices both on the Aéropostale website and in its retail stores in Washington and throughout the nation. Aeropostale had rarely if ever offered the Crew Tee at the $29.50 list price in ***any*** sales channel—whether online or in-store.

48. Aéropostale's false discount advertisements and sales events were intended by Aéropostale to trick its customers into believing that its products had a value of, and were usually sold at, the "regular" reference prices advertised on its website (and printed on its product tags), and that the purported "sale" prices and advertised discounts represented a special and limited-time bargain.

49. In fact, the sale and discount representations on its website were false and misleading because customers were not receiving the special bargain that Aéropostale led them to believe. The specific amounts of the percentage-off or dollar discount may have slightly changed over time, but the existence of a significant discount on each product was perpetual.

50. Moreover, Aéropostale had no means to "establish" its online list prices through full-price sales in its brick-and-mortar retail stores. Based on the investigation of Plaintiff's counsel, Aéropostale offered and advertised its products with identical list prices and at substantially the same sale prices both on the Aéropostale website and in its retail stores in Washington and throughout the nation.



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Aeropostale virtually never offered its discounted products at the list price in ***any*** sales channel—whether online or in-store.

51. For example, in Aéropostale's retail stores, Aéropostale's regular practice was to post large signs on its store windows and throughout its retail stores advertising the same sales events and pricing that were on its website. Typically, Aéropostale posted signs throughout its retail stores advertising its products as being are "XX% OFF" (usually 50-70% off). These signs were usually pre-printed, but Aéropostale also posted hand-written signs on black chalkboard in its stores to further give the appearance of a special limited-time sale. But in fact, the percentage-off savings and discounts were perpetual (and identical to the false savings and discounts advertised on the Aéropostale website).



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

52. Below are photographs taken at an Aéropostale store in Washington state on July 7, 2019, which were representative of Aéropostale's in-store advertising.

**Percentage-Off Discount Advertising**
**Aéropostale Washington Retail Store on July 7, 2019**






HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

53. In the example above, Aéropostale advertised an "ENTIRE STORE 50-70% OFF" sale event. The promised discounts were advertised on large signs both outside and inside the store. Signage on the racks adjacent to the clothing items prominently advertised "50% OFF," "60% OFF" and "70% OFF" in bold lettering. Aéropostale had also placed hand-written chalkboard signs in the store which advertise discounts such as "50% OFF" and "70% OFF." Aéropostale's advertised discounts and reference prices were false and deceptive because it offered nearly all of its products at 50-70% nearly all of the time in all of its sales channels.

**B. <u>Aéropostale's False "Free" Offers</u>**

54. Another related false discounting practice by Aéropostale was to advertise "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free" offers for its products.

55. However, in all cases, Aéropostale's promise of "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free" was false and deceptive. Whenever Aéropostale made such a purported "Free" offer, Aéropostale inflated the first item's selling price to the (never otherwise charged) price listed on the tag. Given Aéropostale's perpetual "discount" pricing of 50-70% off the list price, this means Aéropostale was directly recovering the cost of the "free" product(s) by doubling or tripling the price of the first product, such that the customer was in fact not getting any deal at all.



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

56. For example, below are two screenshots from the Aéropostale website demonstrating Aéropostale's false free offer scheme.

**Aéropostale Website January 13, 2021**
**Advertised With a 50% Discount From an Inflated Reference Price**




**Aéropostale Website January 14, 2021**
**Advertised With False "BUY 1 GET 1 FREE" Offer (Selling Price is Exactly Doubled)**




57. This item, the Max Stretch Air Athletic Skinny Jean ("Skinny Jean"), was always offered by Aéropostale on its website (and also in its retail stores) either as "on sale" for $27.48 or less, or at the $54.95 price with a "Buy 1 Get 1 Free" offer. Note that $27.48 is exactly 50% of $54.95. In other words, as the screenshot demonstrates, on January 14, 2021, Aéropostale formulaically doubled the selling price of the Skinny Jean in order to offer its (false) "Buy 1 Get 1 Free" offer.

58. The "Buy 1 Get 1 Free" offer for the Skinny Jean was false and deceptive because Aeropostale virtually never offered the Skinny Jean at the $54.95



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

reference price (i.e., the list price, which was also printed on the product tag).

59. Moreover Aéropostale had no means to "establish" the $54.95 reference price through in-store sales at the full price, because Aéropostale's prices and perpetual discounts were consistent both online and in-store. Aéropostale rarely if ever offered the Skinny Jean for the $54.95 list price in ***any*** sales channel.

60. Below are photographs taken at an Aéropostale retail store in Washington on July 7, 2019, demonstrating that Aéropostale utilized the same "Buy 1 Get 1 Free" and "Buy 1 Get 2 Free" false advertising in its brick-and-mortar retail stores:



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

**"Buy 1 Get 1 Free" and "Buy 1 Get 2 Free" Advertising**
**Aéropostale Washington Retail Store on July 7, 2019**




61. On that same day of July 7, 2019, Aéropostale was likewise advertising on its website homepage a "BUY ONE GET ONE FREE" fake "sale."

62. The Federal Trade Commission warns sellers advertising "Free" offers that "Where the seller, in making such an offer, increases his regular price of the



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

article required to be bought, or decreases the quantity and quality of that article, or otherwise attaches strings (other than the basic condition that the article be purchased in order for the purchaser to be entitled to the 'free' or '1¢' additional merchandise) to the offer, the consumer may be deceived." 16 C.F.R § 233.4. "In other words, when the purchaser is told that an article is 'Free' to him if another article is purchased, the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other. *Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased* . . ." 16 C.F.R. § 251.1 (emphasis added).

63. Aéropostale engaged in exactly this deceptive and unlawful practice, in violation of the FTC Rules and the Washington CPA, when it recovered the cost of the supposedly "free" product(s) by doubling or tripling the price of the first product. Aéropostale's "free" offer representations were false, and the customer was not in fact getting the bargain that Aéropostale was advertising.

64. Meanwhile, these "BUY 1 GET 1 FREE" or "BUY 1 GET 2 FREE" offer days, on which Aéropostale increased the price of the first product to the inflated list price, did not constitute bona fide offers to sell the product at the list price because the product was *only* offered at the list price when accompanied by a supposedly "FREE" offer. Thus, Aéropostale cannot credibly claim to have "established" its list prices via this deceptive free offer scheme, which was itself an independent unlawful act and practice.



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## V. PLAINTIFF'S ALLEGATIONS ARE BASED ON A COMPREHENSIVE INVESTIGATION OF OVER 7 YEARS.

65. Plaintiff's allegations concerning Aéropostale's false discount advertising scheme are based on a comprehensive investigation by Plaintiff's counsel of Aéropostale's pricing practices for a period of over 7 years. Plaintiff's counsel has been monitoring and scraping the Aéropostale website on an automated daily basis with a proprietary software program since November 5, 2014. Plaintiff's counsel has compiled and extracted daily pricing and marketing data from the website for nearly all of the products Aéropostale has offered during this time. In total, **Plaintiff's counsel has assembled and analyzed an exhaustive historical database of daily prices and time-stamped website screenshots of over 4.4 million daily offerings of over 44,000 products over this more than 7-year period**. (Note, although counsel has been investigating the Aéropostale business since November 5, 2014, the allegations of this Complaint only concern Aéropostale's actions since September 16, 2016, during which time Defendant has owned and/or operated the Aéropostale business.)

66. **Moreover, Aéropostale has had no means to "establish" its list prices through full-price sales in its brick-and-mortar retail stores.** Plaintiff's counsel has also investigated brick-and-mortar Aéropostale retail stores in Washington state (and also in other states) and has found that Aéropostale's prices and false discount practices were substantially the same both online and in-store. Based on the investigation of Plaintiff's counsel, Aéropostale offered and advertised its products with identical list prices and at substantially the same sale prices both on the Aéropostale website and in its retail stores in Washington and throughout the nation. Aeropostale's discounted products were virtually never offered at the list price in ***any*** sales channel—whether online or in-store.



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

67. For example, the images below demonstrate how Aéropostale's list prices, selling prices, and advertised discounts were substantially the same both online and in-store:

| **Aéropostale Washington Retail Store**<br>**November 26, 2019** | **Aéropostale Website**<br>**November 26, 2019** |
|---|---|
| **Long Sleeve Seriously Soft Crew Tee**<br>**Sales Price: $7.87; List Price $29.50** | **Long Sleeve Seriously Soft Crew Tee**<br>**Sales Price: $7.87; List Price $29.50** |










68. The images above are of the Aéropostale Long Sleeve Seriously Soft Crew Tee ("Crew Tee"). The photographs on the left were taken at an Aéropostale retail store in Washington on November 26, 2019. The screenshot on the right was taken the same day on Aéropostale's website of the identical Crew Tee. The top photographs on the left show the $7.87 sale price and the $29.50 list price printed on the item tag. On the website, Aéropostale advertised the same $29.50 list price (here represented with a strike-through indicating it is the higher regular price), alongside



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

the same $7.87 sale price.

69. The images below further demonstrate how Aéropostale's list prices, selling prices, and advertised purported discounts were substantially the same both online and in-store:

**Aéropostale Washington Retail Store**
**July 7, 2019**

**A87 Solid Logo Pique Polo**
**Sales Price: $10.00; List Price $29.50**







**Aéropostale Website**
**July 7, 2019**

**A87 Solid Logo Pique Polo**
**Sales Price: $10.00; List Price $29.50**




70. The images above are of the Aéropostale A87 Solid Logo Pique Polo ("Solid Polo"). The photographs on the left were taken at an Aéropostale retail store in Washington on July 7, 2019. The screenshot on the right was taken the same day on Aéropostale's website of the identical Solid Polo. The photographs on the left show the $10.00 sale price and the $29.50 list price printed on the product tag. On the website, Aéropostale advertised the same $29.50 list price (here represented with a



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

strike-through indicating it is the higher regular price), alongside the same $10.00 sale price.

71. Plaintiff's counsel's exhaustive big-data analysis of millions of data points for more than 44,000 products over this more than 7-year period shows that Aéropostale advertised perpetual discounts for nearly all of its products. The percentage-off and other discounts were ***always*** false, and Aéropostale's advertised former prices (i.e., the strike-through prices which Aéropostale labeled on its website as the **"REGULAR PRICE"**) to which the discounts were applied were false and inflated. In fact, for the majority of the products that Aéropostale advertised with a discount or with a "Free" offer, Aéropostale had ***never***—not even for a single day—offered the product at the list price without a discount or "free" offer.

72. On those rare occasions that Aéropostale offered some of its products at list price, it did so in bad faith, solely for the purpose of "establishing" its list price to attempt to exculpate itself from legal liability for its illegal pricing scheme. It was Aéropostale's intent to sell few if any products at list price, and in fact Aéropostale sold no, or practically no, products at list price.

73. Counsel's comprehensive investigation has revealed and documented that the Aéropostale business was perpetrating this massive false discount advertising scheme online (and also in Aéropostale retail stores) since at least November 5, 2014. (However, the allegations of this Complaint only concern Aéropostale's sales on its website since September 16, 2016, during which time Defendant has owned and/or operated the Aéropostale business.)

74. The false or misleading nature of Aéropostale's purported discounts and list prices were at all relevant times masked or concealed or hidden such that an ordinary consumer exercising reasonable care under all the circumstances would not have known of or discovered their false or misleading nature.



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

75. By Aéropostale's design, the false advertising scheme by its very nature was hidden and impossible for the typical consumer to discover. Consumers who shopped on the Aéropostale website would have no way to know the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have no way to know that the strike-through reference prices and "REGULAR PRICE" representations on the product webpages were fictitious and inflated and that the advertised savings were false.

76. In fact, counsel for Plaintiff only found evidence of Aéropostale's advertising scheme as part of an expensive and expansive multi-year investigation of Aéropostale's pricing practices in general.

## VI. CUSTOMERS WERE HARMED AS A RESULT OF AÉROPOSTALE'S FALSE DISCOUNT ADVERTISING SCHEME

77. As a direct and proximate result of Aéropostale's false discount advertising scheme and the acts and omissions described herein, all Washington consumers who purchased a product from the Aéropostale website that was advertised with a discount, reference price, and/or "free" offer were harmed and were injured in their business or property.

78. **First**, customers were injured because they would not have purchased the items at the prices they paid had they known the items had not in fact been regularly offered at the higher listed price. Customers paid more than they otherwise would have paid for the products they purchased.

79. **Second**, customers were injured because they did not enjoy the actual discounts Aéropostale represented and promised to them.

80. **Third**, customers were injured because the items they purchased were not worth the inflated amount that Aéropostale represented to them. In fact, the items did not normally sell for, and were not actually worth, the fictitious and invented list



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

price advertised on Aéropostale's website (and printed on its product tags).

81. **Fourth**, customers were injured because they paid a price premium due to illegitimately inflated demand resulting from Aéropostale's deceptive pricing scheme. Aéropostale's false discount advertising scheme illegitimately increased demand for Aéropostale's products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged. Aéropostale's false advertising scheme enabled Aéropostale to charge everyone more for all of its products by artificially stimulating demand based on false pretenses. But for the false advertising scheme, Aéropostale would have had to charge less money for its products in order to enjoy the same level of demand for its products.

## VII. PLAINTIFF'S FACTUAL ALLEGATIONS

82. Plaintiff Shawnna Montes is, and at all relevant times has been, a Washington resident and citizen.

83. Ms. Montes has been a regular shopper at Aéropostale for many years.

84. Ms. Montes has made numerous purchases of products from Aéropostale's website which were advertised with a discount (and also from Aéropostale's retail store in Spokane Valley Mall, Spokane Washington).

85. For example, On January 9, 2021, Ms. Montes visited the Aéropostale website to shop for clothing items. Ms. Montes viewed and ultimately purchased several items from the website that day. For example, Ms. Montes viewed webpages advertising a Seriously Soft Heathered High-Rise Leggings, Item # 70411499 (the "Leggings").



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

86. Below is a screenshot of the product webpage for the Leggings viewed by Ms. Montes on January 9, 2021:




87. As reflected in the screenshot above, Ms. Montes viewed discount pricing representations for the Leggings. Ms. Montes viewed a strike-through reference price of "~~$12.50.~~" Directly below this reference price, Ms. Montes viewed the "sale" price of $6.00.

88. Relying on Aéropostale's representations, Ms. Montes reasonably believed that the Leggings were regularly and normally offered for sale and sold by Aéropostale for the $12.50 reference price. Ms. Montes reasonably believed that the Leggings were thereby worth and had a value of $12.50. Ms. Montes reasonably believed that the advertised "sale" price of $6.00—a purported monetary discount of $6.50—represented a special bargain.

89. Relying on Aéropostale's representations, Ms. Montes purchased one



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

pair of the Leggings.

90. However, the advertised regular price and discount for the Leggings—which were exclusively offered and sold by Aéropostale—were false and deceptive because, unbeknownst to Ms. Montes, Aéropostale had almost never offered the Leggings at the advertised regular price of $12.50.

91. As part of its investigation, Plaintiffs' counsel had tracked the online daily prices of the Leggings. Based on the daily data and screenshots collected by Plaintiffs' counsel, for the six-month period June 23, 2020, through the date of Ms. Montes's purchase on January 9, 2021, Aéropostale offered the Leggings on its website at the supposed regular price of $12.50 for only a single day, on January 6, 2021. For all other days, Aéropostale's offering price ranged from $5.00 (i.e., 17% less than what Ms. Montes paid) to $6.00 (the same price that Ms. Montes paid). Based on information and belief, Aéropostale offered the Leggings at the $12.50 price on its website for that single day on January 6, 2021, in bad faith with the expectation of selling no or virtually no Leggings that day at that inflated price, solely for the purpose of "establishing" its list price in an attempt to exculpate itself from legal liability for its illegal pricing scheme.

92. Moreover, Aéropostale had no means to "establish" the $12.50 list price for the Leggings in its brick-and-mortar retail stores. Based on the investigation of Plaintiff's counsel, Aéropostale offered and advertised its products with identical list prices and at substantially the same sale prices both on the Aéropostale website and in its retail stores in Washington and throughout the nation. Aeropostale had rarely if ever offered the Leggings at the $12.50 list price in ***any*** sales channel—whether online or in-store.

93. In fact, Ms. Montes placed the order for the Leggings online to be picked up in-store, and she then picked up the Leggings at her local Aéropostale store at



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Spokane Valley Mall.

94. The Leggings purchased by Ms. Montes from Aéropostale were not in fact worth the advertised $12.50 supposed "regular" price that Aéropostale had led Ms. Montes to believe. Contrary to Aéropostale's representations, Ms. Montes did not enjoy the advertised and promised savings for the Leggings.

95. Aéropostale's advertised false discount from a false former price was a material misrepresentation and inducement to Ms. Montes's purchase.

96. As a direct and proximate result of Aéropostale's acts and omissions, Ms. Montes was harmed, suffered an injury-in-fact, and lost money or property.

97. Ms. Montes reasonably relied on Aéropostale's material misrepresentations. If Ms. Montes had known the truth, she would not have purchased the Leggings at the price she paid.

## VIII. CLASS ACTION ALLEGATIONS

98. **Class Definition**: Plaintiff Shawnna Montes brings this class-action lawsuit on behalf of herself and on behalf of the members of the following class (the "Class"):

> **All citizens of the State of Washington who, since September 16, 2016, purchased from the Aéropostale website one or more products which was advertised with a discount or "free" offer.**

99. The allegations of this Complaint only concern Aéropostale's actions since September 16, 2016, during which time Defendant has owned and/or operated the Aéropostale business. The applicable limitations period extends back this entire period by application of the discovery rule. In fact, Counsel's investigation shows that Aéropostale's unlawful false discounting practices have been pervasive on its website—and have been at the core of its marketing plan—for years before that. By Aéropostale's design, the false advertising scheme is by its very nature hidden and



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

impossible for the typical consumer to discover. Plaintiff and the members of the Class did not know, and could not have known, that the reference prices and advertised discounts on the Aéropostale website were false.

100. Specifically excluded from the Class are the Defendant, any entity in which the Defendant has a controlling interest or which has a controlling interest in the Defendant, the Defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

101. ***Numerosity***. Plaintiff does not know the exact number of Class members but is informed and believes that the Class easily comprises of thousands of individuals. As such, Class members are so numerous that joinder of all members is impracticable.

102. ***Commonality and Predominance***. Well-defined, nearly identical legal or factual questions affect the members of the Class. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

a) Aéropostale's policies and actions regarding its advertising;

b) The accuracy of Aéropostale's advertised discounts and reference prices;

c) The accuracy of Aéropostale's advertised "free" offers such as "Buy 1 Get 1 Free" and "Buy 1 Get 2 Free";

d) Whether the alleged conduct of Aéropostale violates the Washington Consumer Protection Act (RCW Chapter 19.86);

e) Whether the alleged conduct of Aéropostale violates 16 C.F.R § 233.1 *et seq.* and 16 C.F.R. § 251.1; and



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

f) Whether Plaintiff and the class have suffered injury as a result of Aéropostale's false discount advertising practices and misrepresentations.

103. ***Typicality.*** Plaintiff's claims are typical of Class members' claims. Plaintiff's claims and Class members' claims all arise from the same false discount advertising practices and misrepresentations and are based on the same legal theories. Plaintiff and Class members all sustained injury as a result of Defendant's practices and schemes.

104. ***Adequacy.*** Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests. Plaintiff has retained counsel who have considerable experience and success in prosecuting complex class action and consumer protection cases.

105. Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## CAUSES OF ACTION

### COUNT I
### Violation of the Washington Consumer Protection Act (RCW Chapter 19.86)

106. Plaintiff realleges and incorporates by reference all paragraphs alleged hereinbefore.

107. The Washington Consumer Protection Act (the "CPA"), RCW 19.86, declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020. A consumer may bring a private action to recover actual damages (which may be trebled), costs, and attorneys' fees. RCW 19.86.090.

108. Defendant's acts and omissions, including advertising false discounts, false former prices, and false "free" offers, constitute unfair methods of competition and/or unfair or deceptive acts or practices which directly or indirectly affect the people of the State of Washington, and which caused injury to Plaintiff and the Class members' business or property. Defendant's acts and practices are directly contrary to the FTC Rules by which the CPA states the Court should be guided, including the FTC rules on former price comparison advertising at 16 C.F.R § 233.1 *et seq*. and the FTC rules on "free" offers at 16 C.F.R. § 233.4 and 16 C.F.R. § 251.1 as further described above.

109. Defendant SPARC Group LLC d/b/a Aéropostale engages in the conduct of trade or commerce. For example, and without limitation, Defendant engages in the sale of assets (including the clothing and apparel products that Defendant sells) and engages in commerce directly affecting the people of Washington.

110. Defendant's unlawful conduct intended to, or had the capacity to, deceive a substantial portion of the public.

111. Further, under Washington law, "[t]he capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among



HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

us." *Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011).

112. Defendant's pricing misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions. Plaintiff and Class members reasonably relied on Aéropostale's material misrepresentations.

113. As a direct, substantial, and proximate result of Defendant's unlawful conduct, Plaintiff and Class members suffered injury to their business or property.

114. Plaintiff and the Class were harmed because they would not have purchased the items at the prices they paid had they known the items had not been regularly offered at the higher list price. They did not enjoy the actual discounts Aéropostale represented and promised them. Plaintiff and the Class were harmed because the items they purchased were not in fact worth the inflated amount that Aéropostale represented to them. In fact, the items did not normally sell for, and were not actually worth, the fictitious and invented "regular price" that Aéropostale listed on its website. Plaintiff and the Class were also harmed because they paid a price premium due to illegitimately inflated demand resulting from Aéropostale's deceptive pricing scheme. But for the false advertising scheme, Aéropostale would have had to charge less money for its products in order to enjoy the same level of demand for its products.

115. The acts and omissions of Defendant pled herein are injurious to the public interest because said acts and omissions: (a) injured other persons in addition to Plaintiff; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons. *See* RCW 19.86.093(3).

116. The unlawful acts and omissions pled herein were committed in the course of Defendant's business. The unlawful acts and omissions pled herein were, are and continue to be part of a pattern or generalized course of conduct. The acts and



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

omissions of Defendant pled herein were and are not reasonable in relation to the development and preservation of business.

117. With respect to any omissions, Aéropostale at all relevant times had a duty to disclose the information in question because, inter alia: (a) Aéropostale had exclusive knowledge of material information that was not known to Plaintiff and the Class; (b) Aéropostale concealed material information from Plaintiff and the Class; and (c) Aéropostale made partial representations which were false and misleading absent the omitted information.

## **PRAYER FOR RELIEF**

Plaintiff Shawnna Montes, on behalf of herself individually, and on behalf of the Class of all others similarly situated, hereby respectfully requests that this Court order relief and enter judgment against Defendant SPARC Group LLC d/b/a Aéropostale as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2. Declare that the discovery rule applies and that the applicable limitations period—and the corresponding class period—extends to September 16, 2016;

3. Order Defendant to pay damages, including actual damages, to Plaintiff and the Class in an amount to be determined at trial but which is more than $5 million, pursuant to, without limitation, RCW 19.86.090;

4. Declare an increase in the award of actual damages of up to treble the actual damages pursuant to, without limitation, RCW 19.86.090;

5. Order disgorgement or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly or indirectly, from Plaintiff and the members of the Class or otherwise as a result of the unlawful conduct alleged herein;



**HATTIS & LUKACS**
11711 SE 8th St., Suite 120
Bellevue, WA 98005
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

6. Order nominal damages;

7. Order Defendant to pay pre-judgment and/or post-judgment interest to the extent allowed by law;

8. Order Defendant to pay attorneys' fees to the extent allowed by law;

9. Order Defendant to pay costs to the extent allowed by law; and/or

10. Provide any other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff Shawnna Montes demands trial by jury on all issues so triable.

DATED: September 15, 2022

Presented by:

HATTIS & LUKACS

By: ______________________
Daniel M. Hattis

By: ______________________
Paul Karl Lukacs

By: ______________________
Che Corrington

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Paul Karl Lukacs, WSBA No. 56093
pkl@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
HATTIS & LUKACS
11711 SE 8th St., Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

AND

Stephen P. DeNittis, Esq.*
sdenittis@denittislaw.com
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978

*Attorneys for Plaintiff and the Proposed Class*

**Pro hac vice application to be submitted*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

SHAWNNA MONTES

**(b)** County of Residence of First Listed Plaintiff Spokane, WA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel M. Hattis, Esq. | Hattis & Lukacs | (425) 233-8650
11711 SE 8th St., Ste 120, Bellevue, WA 98005

**DEFENDANTS**

SPARC GROUP LLC

County of Residence of First Listed Defendant Lyndhurst, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [x] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. 1332(d)(2)

Brief description of cause:
Violation of the Washington Consumer Protection Act

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** AT LEAST $5,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE September 15, 2022

SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

JS 44 Reverse (Rev. 10/20)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Case 2:22-cv-00254-DGE    Document 1    Filed 09/15/20    Page 1 of 1

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

**Eastern District of Washington**

SHAWNNA MONTES,
on behalf of herself and all others similarly situated,

*Plaintiff(s)*

v.

SPARC GROUP LLC,

*Defendant(s)*

Civil Action No.

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)* SPARC Group LLC
125 Chubb Avenue, 5th Floor
Lyndhurst, New Jersey 07071

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Daniel M. Hattis (Attorney for Plaintiff Shawnna Montes)
Hattis & Lukacs
11711 8th St., Suite 120
Bellevue, WA 98005

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date

**SEAN F. McAVOY, Clerk**