**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

JOHN SANTIAGO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MATTRESS FIRM, INC.,

Defendant.

Case No. 3:26-cv-5437-DGE

**DEFENDANT MATTRESS FIRM, INC.'S REPLY IN SUPPORT OF THE MOTION TO STRIKE PLAINTIFF'S NATIONWIDE CLASS ALLEGATIONS FROM THE COMPLAINT**

Judge: Chief Judge David G. Estudillo



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Washington law cannot govern out-of-state consumers' claims. ..... 2

1. Applying Washington law nationwide violates constitutional limits. ..... 2

2. The Court lacks personal jurisdiction over out-of-state class members' claims. ..... 3

3. Washington's choice-of-law rules preclude applying Washington law nationwide. ..... 5

(a) Mattress Firm has demonstrated actual, outcome-determinative conflicts. ..... 5

(b) The time to consider choice-of-law issues is now. ..... 7

(c) Other states' interests outweigh Washington's. ..... 8

B. Applying the laws of multiple states negates any benefit of class proceedings. ..... 9

III. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*10th Gear LLC v. Paccar, Inc.*,
765 F. Supp. 3d 1078 (W.D. Wash. 2025)....................9

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)....................7

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996)....................3

*Balmuccino, LLC v. Starbucks Corp.*,
No. 2:22-cv-01501 JHC, 2023 WL 4761447 (W.D. Wash. July 26, 2023)....................5

*Bates v. Bankers Life & Cas. Co.*,
848 F.3d 1236 (9th Cir. 2017)....................1

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*,
582 U.S. 255 (2017)....................3, 4

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
476 U.S. 573 (1986)....................3

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020)....................4, 5

*Cashatt v. Ford Motor Co.*,
No. 3:19-cv-05886-RBL, 2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)....................9

*Chebul v. Tuft & Needle, LLC*,
No. 2:24-cv-02707-JLS-MAR, 2024 WL 5257021 (C.D. Cal. Oct. 9, 2024)....................7

*Darisse v. Nest Labs, Inc.*,
No. 5:14-cv-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)....................10

*Decker v. Mazda Motor of Am., Inc.*,
No. 8:11-cv-00873-AG-MLG, 2013 WL 12129281 (C.D. Cal. Mar. 29, 2013)....................8

*In re Dicamba Herbicides Litig.*,
359 F. Supp. 3d 711 (E.D. Mo. 2019)....................4

*Erwin v. Cotter Health Ctrs.*,
161 Wn. 2d 676 (2007)....................5



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

*Frezza v. Google Inc.*,
No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ..............................7

*FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*
180 Wn. 2d 954 (2014) ..........................................................................................7, 8

*Garvey v. Am. Bankers Ins. Co. of Fla.*,
No. 1:17-CV-00986, 2019 WL 2076288 (N.D. Ill. May 10, 2019)..........................................4

*Gazzillo v. Ply Gem Indus., Inc.*,
No. 1:17-cv-01077-MAD-CFH, 2018 WL 5253050 (N.D.N.Y. Oct. 22, 2018).......................4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................................10

*Mazza v. American Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2012) .......................................................................................7, 8, 9

*Moser v. Benefytt, Inc.,*
8 F.4th 872 (9th Cir. 2021) ...........................................................................................1, 3, 4

*Pattison v. HP Inc.*,
No. 24-cv-02752-MMC, 2024 WL 5011945 (N.D. Cal. Dec. 5, 2024) .................................10

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985)...........................................................................................................1, 2, 3

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
No. 2:16-CV-00665, 2017 WL 3129147 (E.D. Pa. July 24, 2017) ..........................................4

*Reitman v. Champion Petfoods USA, Inc.*,
No. 2:18-cv-01736-DOC-JPR, 2018 WL 4945645 (C.D. Cal. Oct. 10, 2018).........................4

*Scherzi v. Pac. Mkt. Int'l, LLC*,
No. 2:24-cv-02151-RAJ, 2026 WL 820820 (W.D. Wash. Mar. 25, 2026) ..............................6

*Schnall v. AT&T Wireless Servs., Inc.*
171 Wn. 2d 260 (2011) ......................................................................................................10, 11

*Southwell v. Widing Transp., Inc.*,
101 Wn. 2d 200 (1984) ..........................................................................................................7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...........................................................................................................10

*Wysocki v. Zoom Tech., Inc.,*
No. 3:22-cv-05453-DGE, 2024 WL 1139094 (W.D. Wash. Mar. 15, 2024) ............................1

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837 (N.D. Cal. 2018) .......................................................................... 7

*Zuehlsdorf v. FCA US LLC*,
No. 5:18-cv-01877-JGB-KK, 2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) .......................... 4

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 3, 4, 5

Fed. R. Civ. P. 12(f) ........................................................................................................ 4

Fed. R. Civ. P. 23 ........................................................................................................ 1, 10, 11

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 11



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

## I. INTRODUCTION

The Court should strike Santiago's nationwide class allegations for four reasons: (1) the Constitution prohibits applying Washington law to transactions occurring entirely outside Washington; (2) this Court lacks personal jurisdiction over claims by out-of-state purchasers who bought their mattresses outside Washington; (3) Washington's choice-of-law rules preclude applying Washington common law nationwide; and (4) applying the laws of multiple states would negate any supposed benefit of class proceedings.

Santiago's Opposition does not dispute the key facts from which each defect flows: he is a single Washington-based purchaser seeking to represent consumers from all 50 states, yet he identifies no connection between Washington and the claims of people who purchased mattresses elsewhere. None of his three responses fixes the problem. *First*, he misreads *Phillips Petroleum Co. v. Shutts* by focusing on his own Washington-based transaction rather than contacts between Washington and the absent class members' claims. 472 U.S. 797, 821 (1985). *Second*, he invokes *Moser v. Benefytt, Inc.* to delay the personal-jurisdiction issue until class certification, but *Moser* does not authorize jurisdiction over claims lacking any forum connection, much less cure Santiago's independent choice-of-law and Rule 23 problems. 8 F.4th 872, 877 (9th Cir. 2021). *Third*, he insists that Mattress Firm has not shown an "actual conflict" among state laws while ignoring the five 50-state surveys attached to the Motion, which identify numerous outcome-determinative differences across the claims Santiago seeks to aggregate.

The Opposition amounts to a plea for delay: defer these issues until class certification, conduct expensive discovery to "develop [the] record," and hope facts later emerge to support a nationwide class. But where, as here, the deficiencies are baked into the Complaint, no amount of discovery can transform out-of-state purchases into Washington claims or make Washington law applicable nationwide.

Mattress Firm has shown that the class is not certifiable, meeting its burden under *Wysocki v. Zoom Tech., Inc.,* No. 3:22-cv-05453-DGE, 2024 WL 1139094, at *4 (W.D. Wash. Mar. 15, 2024). Its Motion and accompanying 50-state surveys show, as a matter of law, that the constitutional constraints, choice-of-law conflicts, and Rule 23 defects inherent in the Complaint preclude certification. The Court should resolve these legal issues now, rather than after expensive and pointless discovery. *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017).

## II. ARGUMENT

### A. Washington law cannot govern out-of-state consumers' claims.

#### *1. Applying Washington law nationwide violates constitutional limits.*

Mattress Firm's Motion showed that the Due Process, Full Faith and Credit, and Commerce Clauses prohibit applying Washington law to transactions occurring entirely outside Washington. [Mot. at 5–7 (citing *Shutts*, 472 U.S. at 818–23).] The question is not whether Washington has contacts with Santiago's own purchase, but whether Washington has a "significant contact or significant aggregation of contacts" with the claims of absent class members whose transactions occurred outside Washington.

Santiago's Opposition crucially does not dispute Mattress Firm's showings that (a) Mattress Firm is not a Washington citizen [Compl. ¶ 9; Mot. 1–2], and (b) the Complaint never alleges that Mattress Firm developed the challenged pricing practices in Washington [Compl. at ¶¶ 14–49]. Nor does it offer any Washington connection to the claims of non-Washington members of the putative class.

Santiago's attempt to distinguish *Shutts* falls flat. He contends that Mattress Firm directed representations "into Washington," where Santiago received them, accepted Santiago's order in Washington, delivered his mattress to Washington, and operates Washington retail stores. [Opp. at 3–4.] But Santiago shares those contacts only with other Washington-based consumers. None establishes a Washington contact with the claims of consumers from other states. Those consumers viewed Mattress Firm's website, purchased a mattress, received it, and allegedly suffered injury in their home states.

*Shutts* is directly on point. There, the Supreme Court held that a Kansas court could not apply Kansas law nationwide merely because the case was filed in Kansas and some class members had Kansas connections. 472 U.S. at 815–23. The absent class members were royalty owners across the country and abroad whose claims arose from gas leases, royalty payments, and transactions overwhelmingly outside Kansas—not Kansas consumers engaged in Kansas transactions. 472 U.S. at 797. Phillips Petroleum Co. conducted business in Kansas and in other states, but that multistate presence did not give Kansas a sufficient contact with every out-of-state claim. The Constitution requires sufficient contacts between Kansas and the claims governed by Kansas law, and Kansas could not "abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Id.* at 822 (citation omitted). Those constitutional constraints "must be respected even in a nationwide class action." *Id.* at





Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

823.

The same principle controls here. Washington law can apply to the claims of Washington consumers. But not to others. Neither filing this case in Washington nor Mattress Firm's alleged operation of stores and sale of products nationwide supplies a Washington nexus for claims by consumers in other states. Indeed, the Opposition effectively confirms Mattress Firm's point by identifying *no Washington contact* belonging to an out-of-state purchaser. *Shutts* therefore forecloses Santiago's attempt to apply Washington law to consumers with no Washington contacts: a forum "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" 472 U.S. at 821.

Santiago's attempts to distinguish *BMW of N. Am., Inc. v. Gore*, and *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, fare no better. [Opp. at 3–4 n.2]; 517 U.S. 559, 572 (1996); 476 U.S. 573, 576 (1986). Although *Gore* addressed punitive damages and *Brown-Forman* addressed liquor regulation, those factual differences do not erase the constitutional bedrock of both decisions: a state may not use its own law to dictate commercial conduct in other states (*Gore*, 517 U.S. at 572–73), nor project its laws beyond its borders (*Brown-Forman*, 476 U.S. at 576). Those constitutional limits apply regardless of the case's subject matter.

In sum, Washington cannot constitutionally supply substantive law for out-of-staters' claims merely because Santiago happens to live here.

***2. The Court lacks personal jurisdiction over out-of-state class members' claims.***

Mattress Firm's Motion showed that this Court cannot adjudicate claims that occurred elsewhere arising from purchases by non-Washington consumers. [Mot. at 7–9.] Under *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, specific jurisdiction requires an "affiliation between the forum and the underlying controversy." 582 U.S. 255, 262 (2017) (citation omitted). Santiago alleges no such affiliation between Washington and the claims of consumers who bought mattresses elsewhere.

Santiago responds that *Bristol-Myers Squibb* involved a mass-tort action with hundreds of named plaintiffs rather than absent class members. He further argues that the Ninth Circuit decision in *Moser* holds that a Rule 12(b)(2) defense is not "available" against unnamed class members before certification. [Opp. at 4–5 (citing 8 F.4th at 877).] Neither argument addresses the defect Mattress Firm identified.



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

Santiago's reliance on *Moser* is misplaced. *Moser* addressed timing—that is, when a defendant may assert a Rule 12(b)(2) defense against unnamed class members. *Id.* at 877. It is thus irrelevant. Mattress Firm did not move to *dismiss* out-of-staters' claims. Instead, the Motion asks the Court to assess whether the Complaint plausibly alleges a certifiable nationwide class when Washington lacks any jurisdictional basis to adjudicate the claims of out-of-state purchasers. Simply put, *Moser* did not hold that a nationwide class becomes certifiable merely because absent class members are not yet parties. Nor did it prohibit a court from striking facially defective class allegations under Federal Rules 12(f) and 23 before class certification.

Nor can Santiago's attempt to distinguish *Bristol-Myers Squibb* eliminate the underlying constitutional concern. There, the Supreme Court recognized a straightforward principle: a defendant's forum contacts must relate to the claims at issue. 582 U.S. at 262. Santiago identifies contacts relating to his own Washington purchase, but nothing relating to purchases made by consumers in any other states. Discovery cannot cure that omission because those claims lack any alleged Washington connection, whether the purchasers are named plaintiffs or unnamed class members.

Indeed, multiple in-Circuit district courts have recognized that the *Bristol-Myers* principle and underlying due-process implications apply in the class-action context. *See Zuehlsdorf v. FCA US LLC*, No. 5:18-cv-01877-JGB-KK, 2019 WL 2098352, at *14–15 (C.D. Cal. Apr. 30, 2019); *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1032 (S.D. Cal. 2020) ("the court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained"); *Reitman v. Champion Petfoods USA, Inc.*, No. 2:18-cv-01736-DOC-JPR, 2018 WL 4945645, at *5 (C.D. Cal. Oct. 10, 2018) ("The mere fact that other plaintiffs [purchased Champion pet foods] in California … does not allow [this Court] to assert specific jurisdiction over the nonresidents' claims").[1] Those courts recognized that a plaintiff cannot circumvent constitutional limits simply by styling out-of-state individuals as absent class members.

[1] Courts in other circuits agree. *See, e.g.*, *Garvey v. Am. Bankers Ins. Co. of Fla.*, No. 1:17-CV-00986, 2019 WL 2076288, at *2 (N.D. Ill. May 10, 2019) ("[E]xercising specific jurisdiction over defendants with respect to the nonresidents' claims would violate defendants' contacts with Illinois"); *Gazzillo v. Ply Gem Indus., Inc.*, No. 1:17-cv-01077-MAD-CFH, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 724 (E.D. Mo. 2019); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 2:16-CV-00665, 2017 WL 3129147, at *1, 9 (E.D. Pa. July 24, 2017).

*Carpenter*, 441 F. Supp. 3d 1028, 1035–36 (noting that a defendant's selling some products in California does not authorize out-of-state class members to pursue claims in California).

Ultimately, Santiago offers no reason to postpone a Rule 12(b)(2) determination until class certification. He seeks to represent a nationwide class composed of consumers whose purchases occurred outside Washington and whose claims lack any connection to this forum. No amount of discovery can change where those transactions occurred, where those consumers resided, or where their alleged injuries arose. Discovery cannot overcome that jurisdictional deficiency.

***3. Washington's choice-of-law rules preclude applying Washington law nationwide.***

The Motion demonstrated four separate problems: Washington does not have the most significant relationship to out-of-state class members' claims; actual conflicts exist among the states' laws; those differences are materially outcome-determinative; and other states' interests in governing transactions within their borders outweigh any Washington interest. [Mot. at 9–17.]

Santiago's Opposition undermines none of these conclusions.

**(a) <u>Mattress Firm has demonstrated actual, outcome-determinative conflicts.</u>**

Santiago first argues that Mattress Firm has not established an actual conflict because it has not identified any outcome-determinative differences in state law. [Opp. at 5–10.] He is wrong.

Under Washington's choice-of-law framework, an actual conflict exists when "the result for a particular issue is different under the law of the two states." *Erwin v. Cotter Health Ctrs.*, 161 Wn. 2d 676, 692 (2007). Santiago argues that Washington law "presumptively applies" absent such a conflict. [Opp. at 5 (citing *Balmuccino, LLC v. Starbucks Corp.*, 2023 WL 4761447, at *3 (W.D. Wash. July 26, 2023).] But that presumption does not end the analysis. Here, Mattress Firm's five state-law surveys show the precise conflicts. The surveys identify substantive differences governing each claim. [Mot. Exs. 1–5.] Whether any given class member's claims succeed or fail depends on the governing jurisdiction—for example, what a plaintiff must prove and whether a claim is timely altogether.

Start with contract and warranty. The differences governing warranty claims further illustrate the point. Numerous states (*e.g.*, Arkansas, Georgia, Oklahoma, Wyoming) require actual reliance on an





Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

express warranty as an element of the claim, while Washington requires only awareness of the representation. [Mot. Ex. 2; Mot. at 12–13.] Thus, a putative class member who cannot prove reliance may maintain a claim under one state's law but not another's. Likewise, pre-suit notice requirements vary. Some states require notice to the seller (*e.g.,* Washington, West Virginia); some require notice to a remote manufacturer (*e.g.,* Massachusetts, Texas); while others impose no notice requirement at all (*e.g.,* Maine, New York). [Mot. Ex. 2.] And this Court has already recognized that state contract law varies regarding statutes of limitations, types of recovery, and available defenses. [Mot. at 12.] These differences are not cosmetic. They determine whether a given claim may proceed.

The same is true for fraud and misrepresentation. Santiago is wrong to dismiss as immaterial states' different lists of fraud elements. [Opp. at 10.] They are not. For example, Washington requires proof of the plaintiff's right to rely on the alleged representation as a separate element. Other states do not. [Mot. Ex. 3.] Whether a plaintiff had the right to rely may independently defeat a claim irrespective of whether reliance itself occurred. That is a substantive difference affecting liability, not simply a description of elements. Likewise, certain states require knowledge that a representation was false, while others (*e.g.,* Michigan, Ohio, Texas, Wisconsin) allow claims to proceed based on disregard and recklessness as to the falsity of the representation. [*Id.*] Finally, a claim barred under one state's accrual rule but timely under another will produce a different result. Specifically, claims within a six-year statute of limitation (*e.g.*, South Dakota) may survive while those with shorter accrual time such as Alabama and Louisiana, falling within one to two years (including from the date of discovery) may be barred as untimely. [*Id.*; *see also* Mot. Ex. 4 (recovery of damages for negligent misrepresentation limited to persons in special or privity-like relationship under New York law).]

These differences are even more pronounced for unjust enrichment. Twenty states and the District of Columbia bar unjust-enrichment claims when the plaintiff received the benefit of the bargain. [Mot. at 15; Mot. Ex. 5.] More, eleven states require plaintiffs to demonstrate the absence of an adequate remedy at law. [*Id.*] And some states do not recognize unjust enrichment as a standalone cause of action at all. [*Id.*] Those limitations are more than mere "phrases [of] common-law doctrines" or generalities about variations in states' laws. [Opp. 1, 9 (citing *Scherzi v. Pac. Mkt. Int'l, LLC*, No. 2:24-cv-02151-RAJ, 2026 WL 820820, at *10 (W.D. Wash. Mar. 25, 2026).] They are outcome-determinative and can eliminate a

claim entirely.

Nor does *Astiana v. Hain Celestial Grp., Inc.*, suggest that unjust-enrichment differences are immaterial. 783 F.3d 753 (9th Cir. 2015). *Astiana* addressed how courts may construe an unjust-enrichment pleading. *Id*. at 762. It did not hold that the substantive elements of the claim are uniform across states. The Ninth Circuit's own holding in *Mazza v. American Honda Motor Co.*—that unjust-enrichment laws "vary materially"—remains controlling. 666 F.3d 581, 591 (9th Cir. 2012).[2]

Mattress Firm's 50-state surveys demonstrate that these conflicts affect liability and are outcome-determinative. That is sufficient under Washington law.

**(b) <u>The time to consider choice-of-law issues is now.</u>**

Next, Santiago argues that the choice-of-law inquiry is too fact-intensive to resolve until after discovery and class certification. [Opp. at 7–8.] That argument fails.

Santiago's position puts the cart before the horse. If a fully developed factual record were necessary to determine the applicable law, courts could never identify which state's law governs until after extensive discovery or perhaps even trial. That result would undermine the very purpose of choice-of-law analysis: determining what law applies before litigating the merits under that law.

Here, the Complaint provides the facts necessary for a choice-of-law analysis. It shows that Santiago is a Washington resident and that Mattress Firm is a retailer incorporated in Delaware, headquartered in Texas, and operating nationwide. It also shows that putative class members completed their transactions throughout the United States. No additional discovery can change those facts. Nor is there any reason to defer these issues until class certification. *See Chebul v. Tuft & Needle, LLC*, No. 2:24-cv-02707-JLS-MAR, 2024 WL 5257021, at *5 (C.D. Cal. Oct. 9, 2024) (stating that "it would make little sense to wait until class certification proceedings to assess the viability" of nationwide warranty and unjust-enrichment claims).

*FutureSelect* and *Southwell* do not suggest otherwise. Neither decision holds that courts may not address facially apparent choice-of-law defects before certification or discovery. In *FutureSelect Portfolio*

---

[2] Courts within the Ninth Circuit agree that *Mazza* is not only relevant but controlling, even at the pleading stage. *See, e.g., Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018); *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013).



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

*Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, the challenged conduct originated in Washington, where defendants maintained their primary place of business. 180 Wn. 2d 954, 969 (2014). That is why the Washington Supreme Court found substantial contacts with Washington. But here Mattress Firm is incorporated and headquartered elsewhere [Compl. ¶ 9], and Santiago never alleges that any pricing decisions originated in Washington (because they didn't). Likewise, *Southwell v. Widing Transp., Inc.* merely observed that the record before it contained "conclusory allegations." 101 Wn. 2d 200, 206 (1984). Here, by contrast, the record is not conclusory. Mattress Firm submitted detailed surveys identifying specific, claim-by-claim differences. The Court has before it exactly the kind of substantive showing that was missing in *Southwell*.[3]

More fundamentally, Santiago never identifies what discovery could alter the choice-of-law determination. Discovery cannot change where Mattress Firm is headquartered or incorporated. Nor can it change where the absent class members purchased their mattresses, where they received the allegedly misleading representations, or where they suffered any alleged injury. Because the facts relevant to the choice-of-law inquiry are already obvious from the Complaint, the issue can be resolved now.

**(c) <u>Other states' interests outweigh Washington's.</u>**

Finally, Santiago contends that Washington's interests outweigh those of other states because Mattress Firm directed advertising into Washington and operates retail locations here. [Opp. at 3–4, 11.] Yet again, Santiago conflates *his* relationship to Washington with the distinct and separate relationship between Washington and the claims of *absent class members*. That Santiago bought a mattress in Washington says nothing about Washington's connection to consumers in other states.

The Complaint shows that other states have the same relationship to their consumers' putative claims as Washington has to Santiago's. It alleges that Mattress Firm operates stores "in 49 states" and that its Website is accessible "nationwide." [Compl. ¶ 9.] As to out-of-state consumers, Washington's interests cannot outweigh those states' interests.

Indeed, *Mazza* recognized that every state has a strong interest in balancing consumer protection

[3] *See Decker v. Mazda Motor of Am., Inc.*, No. 8:11-cv-00873-AG-MLG, 2013 WL 12129281, at *5 (C.D. Cal. Mar. 29, 2013) (in-circuit authority holding that these charts "fulfill[] any evidentiary burden Defendant might have").

against economic policy concerns and in determining the scope of liability for transactions affecting its citizens. 666 F.3d at 592–93. Likewise, *10th Gear LLC v. Paccar, Inc.* recognized that states possess compelling interests in regulating conduct that may injure their residents and affect their economies. 765 F. Supp. 3d 1078, 1087–88 (W.D. Wash. 2025); [Mot. at 16–17.] Santiago's position is even weaker than the position rejected in *Mazza*. There, Honda was headquartered in California, yet the Ninth Circuit nevertheless held that California's interest in applying its law to out-of-state consumers was "attenuated." 666 F.3d at 594. Mattress Firm is not even headquartered in Washington. If California lacked a sufficient interest to apply its law nationwide based on a California-based corporation's conduct, Washington necessarily lacks such an interest with respect to Mattress Firm, which is incorporated in Delaware and headquartered in Texas.

Simply put, each putative class member's home state has an interest in applying its law, and Santiago offers nothing suggesting that Washington's interest outranks those interests. Washington law cannot govern Santiago's proposed nationwide class.

**B. Applying the laws of multiple states negates any benefit of class proceedings.**

Mattress Firm's Motion showed that because Washington cannot apply nationwide, class proceedings would be unwieldy. Santiago asserts five common-law claims on behalf of consumers in all 50 states. As the Motion's Exhibits 1–5 demonstrate, those claims are governed by materially different legal standards across the nation. [Mot. at 12–18.] Therefore, applying the laws of multiple states would defeat predominance and eliminate any efficiency gained through class treatment.

Rather than address this argument's substance, Santiago pleads for delay, contending that considering the impossibility of class proceedings now would be "premature." [Opp. at 11–13.] But the predominance and superiority problems identified in Mattress Firm's Motion are legal and structural, not factual issues. Discovery cannot eliminate the material differences among the laws governing his breach-of-contract, warranty, fraud, negligent-misrepresentation, and unjust-enrichment claims. Nor can discovery make 50 states' laws uniform. This Court has recognized that it can address class allegations at the pleading stage when the plaintiff cannot show that discovery is likely to produce evidence substantiating the class allegations. *See Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886-RBL, 2020 WL 1987077, at *4 (W.D. Wash. Apr. 27, 2020) (a court may strike class allegations if the plaintiff fails to



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

"make a prima facie showing of Rule 23's prerequisites or that discovery measures [are] likely to produce persuasive information supporting the class allegations") (quotation altered). Because the relevant legal differences already exist, postponing the issue until certification would serve no purpose.

*Schnall v. AT&T Wireless Servs., Inc*., shows as much. There, the court recognized that when, as here, the laws of multiple jurisdictions govern, "the variations in the laws of the states may swamp any common issues and defeat predominance." 171 Wn. 2d 260, 273 (2011). Mattress Firm's state-law surveys identify numerous dispositive differences governing Santiago's five common-law claims, including relevant statutes of limitations, knowledge, and notice requirements. Discovery cannot eliminate those differences, and no amount of evidence can change the legal standards that ultimately govern each putative class member's claims. In that scenario, "there is simply no efficiency in asking a trial judge to manage the laws of 50 different states as they apply to plaintiffs' [common-law] claims and the varied factual scenarios inherent therein." *Id*. at 276; *see also Darisse v. Nest Labs, Inc*., No. 5:14-cv-01363-BLF, 2016 WL 4385849, at *10 (N.D. Cal. Aug. 15, 2016) (analyzing numerous differences in states' laws and concluding they were "plainly [] material.")

Nor does *Pattison v. HP Inc*., offer Santiago support. It addressed a form contract with a broad California choice-of-law provision. The court therefore concluded that California law plausibly could apply on a classwide basis. No. 24-cv-02752-MMC, 2024 WL 5011945, at *3 (N.D. Cal. Dec. 5, 2024). Santiago alleges no blanket choice-of-law provision.

Santiago's reliance on *Hanlon v. Chrysler Corp*., equally falls short. He argues that *Hanlon* supports certification when a common nucleus of facts and remedies predominates. [Opp. at 12.] But *Hanlon* predates *Wal-Mart Stores, Inc. v. Dukes,* which elevated the burden of establishing commonality, and by implication, predominance. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). Further, *Hanlon* concerned state lemon laws, not the common-law claims at issue here, and addressed a class with "named representatives includ[ing] individuals from each state," while Santiago is the lone class representative. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998). And most fundamentally, the *Hanlon* defendant did not show that materially different state laws governed the claims of out-of-state class members. By contrast, Mattress Firm's Motion and Exhibits do just that. Even if Santiago could establish factual commonality (a proposition that Mattress Firm doubts), that cannot override material



Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114

differences in governing laws, which preclude certification. After all, Rule 23(b)(3) expressly requires predominant common questions of both fact *and* law.

Finally, Santiago proposes subclasses to address manageability concerns. [Opp. at 13.] That proposal concedes the central point: if subclasses are necessary, Washington law cannot govern a single nationwide class. Further, Santiago fails to explain how subclasses would function in practice. The Opposition does not say how many subclasses would be required, which states could be grouped for which claims, or how those groups would account for the material differences in the 50-state surveys. Nor does it identify representatives for any of those subclasses. Santiago's vague suggestion would merely replace one nationwide class with a collection of state-law proceedings held under a single case caption. That is the type multistate litigation that *Schnall* found "unmanageable and unduly burdensome." *Schnall v. AT&T Wireless Servs*., 171 Wn. 2d 260, 280 (2011).

Mattress Firm's Motion identified differences in law that will not vanish. The geographic distribution of the proposed nationwide class will not vanish, either. And Santiago identifies no discovery that could later assuage those differences. Because the predominance and superiority defects are apparent on the face of the Complaint and cannot be cured through discovery, the Court should strike the nationwide class allegations at this stage. Any other matrix or alternative proposed in the Opposition is simply too complicated and cannot save Santiago's nationwide plea.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should strike Santiago's allegations seeking to represent the proposed nationwide class. The Constitution, Washington choice-of-law principles, and Rule 23 all preclude his individual Washington purchase from serving as the vehicle for litigating five materially distinct common-law claims arising from purchases allegedly made throughout all 50 states.

Dated: September 14, 2026

Respectfully submitted,

*/s/ Michael D. Meuti*

David R. Ebel, WSBA #28853
Email: debel@schwabe.com
David Leigh, WSBA #58825
Email: dbleigh@schwabe.com
Schwabe Williamson & Wyatt
1420 5th Avenue, Suite 3400
Seattle, WA 98101
206-622-1711

Michael D. Meuti (OH 0087233)
*Admitted Pro Hac Vice*
Benesch, Friedlander, Coplan & Aronoff LLP
Email: mmeuti@beneschlaw.com
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588

Michael B. Silverstein (OH 0098036)
*Pro Hac Vice Forthcoming*
Benesch, Friedlander, Coplan & Aronoff LLP
Email: msilverstein@beneschlaw.com
41 South High Street, Suite 2600
Columbus, Ohio 43215
Telephone: 614.223.9300
Facsimile: 614.223.9330

Ruddy S. Abam (IL 6335470)
*Pro Hac Vice Forthcoming*
RAbam@beneschlaw.com
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192

Attorneys for Defendant
MATTRESS FIRM, INC.

I certify that this memorandum contains 4,169 words, in compliance with the Local Civil Rules